## W. E. MCLAUGHLIN ET AL. v. GYP. SMITH ET AL.

### No. 2430. Decided June 19, 1912.

**1.—Statutory Construction—Official Duty—Permission Implying Obligation.**

The word "may" in a statute defining official duty, in a case where the public or individuals have a right that the power so conferred be exercised, will be construed as mandatory for the purpose of sustaining and enforcing such rights. (P. 333.)

**2.—Same—County Commissioners—School Districts—Control by District Court —Mandamus.**

The power given the Commissioners Court of a County by the Act of February 19, 1909, Laws, 31st Leg., p. 18, to reduce the area of any common school district and create such additional school districts as may be necessary for the best interest of the school children, imposes an obligation which may be enforced under the supervisory power of the District Court, where circumstances demand, by appropriate writs. (Pp. 333, 334.)

**3.—Same.**

A school district had been created, embracing the county seat, containing 200 sections of land, the best in the county, such district being 20 miles in length, containing only 60 scholastics, and leaving a rival town, of greater population, constituting an independent school district, with no more than 35 sections of inferior land. The action of the Commissioners Court in refusing a petition to detach from such district a portion thereof, and the proposed issuance by the district of a bonded indebtedness and purchase of same by the commissioners with funds of the county, which would render unlawful any future change in said district, all showed a total disregard of the public interest and a prostitution of office for selfish purposes. Held that the District Court could require the commissioners by mandamus to grant the petition to reduce the area of such district, and by whatever process was necessary restrain the wrong so done and threatened. (Pp. 332-334.)

Questions certified from the Court of Civil Appeals, Seventh District, in an appeal from Crosby County.

· *Cooper, Merrill & Lumpkin,* for appellants.—The courts are without authority to command the commissioners courts to disregard the positive duty imposed upon them by the statute requiring that they subdivide their respective counties into appropriate school districts, and by mandamus force them to leave a portion of the county unattached to any school district. Constitution of Texas, Article 7, secs. 1, 3 and 3a; Rev. Stat. art. 3938; Acts of Thirty-first Legislature, ch. 124, p. 17, sec. 50; Acts of Twenty-ninth Legislature, ch. 124, p. 263, sec. 50; Willis v. Owen, 43 Texas, 41; Reynolds Land & Cattle Co. v. McCabe, 72 Texas, 57; Parks v. Webb, 9 Texas, 84; Puckett v. White, 22 Texas, 564; Fredericks v. Hamilton, 38 Texas, 342.

The District Court is without authority to control by mandamus the discretion vested by law in the Commissioners' Court with reference to the creation of school districts or changes in the boundaries of those already created. Acts, 29th Leg., ch. 124, sec. 50, as amended by Acts of 31st Leg., ch. 12; Acts of the 29th Leg., ch. 124, secs. 51, 53; Durrett v. Robinson, 103 Texas, 502; Wier v. Hill, 58 Texas Civ. App., 370; Stephens v. Buie, 23 Texas Civ. App., 491; Kaufman County v. McGaughey, 3 Texas Civ. App., 655; Clarke & Courts v. San Jacinto Co., 18 Texas Civ. App., 204.

Mandamus will lie only for the enforcement of a plain legal duty. Teat v. McGaughey, 85 Texas, 485; Arberry v. Beavers, 6 Texas, 464; Orr v. Davis, 9 Texas Civ. App., 628; Cavin v. Coleman, 10 Texas Civ. App., 467; Crow v. Fails, 122 S. W., 933; Conger v. Robinson, 104 Texas, 141.

If acting or proposing to act within their lawful powers, in a lawful manner, and for a lawful purpose, the motives which actuate their conduct in such matters are not the subject of judicial inquiry. City of Austin v. Nalle, 85 Texas, 520; Polly v. Hopkins, 74 Texas, 145.

The Crosbyton District is already as large as is permitted by law, and the Commissioner's Court is now powerless to increase its area. There is no certainty that the legislature will grant them the relief which is necessary before the 24 sections will do them any good. Acts of 29th Leg., ch. 124, sec. 149; 26 Cyc. pp. 153 and 154; People v. Olds, 3 Calif., 167; 58 Am. Dec. 398.

The issuance and sale of bonds will not be enjoined upon suit of citizen or taxpayer, where they are regularly issued by the lawful authority for a lawful purpose, and in a lawful manner. Polly v. Hopkins, 74 Texas, 145; Kaufman Co. v. McGaughey, 3 Texas Civ. App., 655; Nalle v. City of Austin, 85 Texas, 547.

A petition upon which a taxpayer seeks to enjoin the legally constituted officers of a county or a school district from the discharge of the duties ordinarily intrusted to them, or by which is sought to control the conduct of such officers by mandamus, should show by distinct, clear and positive averments and not by inference the illegality of the proposed acts. Cattle Co. v. Board, 80 Texas, 489; Duck v. Peeler, 74 Texas, 272; Ewing v. Duncan, 81 Texas, 30; Buie v. Cunningham, 29 S. W., 801; Burrell v. Blanchard, 51 S. W., 46; Arberry v. Beavers, 6 Texas, 457; Railway Co. v. Jarvis, 15 S. W., 1089, 80 Texas, 456.

*L. W. Dalton* and *J. W. Burton,* for appellees.—The District Court had jurisdiction to issue the mandamus. Sansom v. Mercer, 68 Texas, 488; Stephens v. Buie, 23 Texas Civ. App., 491; Oden v. Barbee, 129 S. W., 602; Porter v. Johnson, 140 S. W., 469; Kimberly v. Morris, 87 Texas, 637; Constitution, art. 5, sec. 8.

The court did not err in decreeing a perpetual writ of injunction against the county judge and county treasurer. The former decision of this court (140 S. W., 248), settles this question. The injunction is ancillary to the main action. If we have the other rights, the writ of injunction necessarily follows to give the judgment effect.

Mr. CHIEF JUSTICE BROWN delivered the opinion of the court.

The certificate in this case is so utterly wanting in compliance with the rules for preparing such that this court would not consider it but for the public interests involved and the character of the case it involves, which might become more complicated should this court dismiss the certificate.

We expressly state that this shall not be regarded as a precedent.

By an Act approved February 19, 1909, the Legislature of this State enacted a law from which we copy the following:

"Sec. 50. It shall be the duty of the county commissioner's courts of all organized counties, not already subdivided, to subdivide their respective counties into convenient school districts by the first day of September, 1909, and any county hereafter organized shall be so subdivided before the beginning of the next ensuing school year after its organization; provided that no district shall hereafter be created having an area of less than sixteen square miles, and not more than one school for white children and one school for colored children shall be established for each sixteen square miles of territory, or major fraction thereof, within such district, provided, the county commissioners court may reduce the area of any common school district and create such additional school districts as may be necessary for the best interests of the school children; provided, that no school districts shall be reduced to contain less than nine square miles of territory, and no new district shall hereafter be created, having a less area than nine square miles, and provided further, that the area of school districts having an outstanding bonded indebtedness shall never be reduced until after such bonded indebtedness shall have been fully discharged."

The Commissioners Court of Crosby County, upon application of defendants in error, refused to change the school district of Emma in that county under the following state of facts:

At a date not mentioned in the statement of facts the County Court of Crosby County laid out the school districts in said county in such manner as to place in the district which includes Emma, the county seat, two hundred sections of land, making the district twenty miles in length and including the best of the lands of the county. The scholastic population in that territory did not exceed "sixty scholastics" in number. The said court gave to no other district more than thirty-five sections of land. Emma is the county seat of that county with a small population; Crosbyton is a town with greater population

and now has an independent school district but with small territory and very inferior quality of land.

The appellants have conspired to dominate and control the Commissioners Court, of which they have the majority, and have arranged to issue bonds by said Emma school district whereby they would prevent a change in that district for many years. It is useless to detail the facts which show an absolute disregard of the public interest by appellants and a shameless prostitution of their offices to the accomplishment of their selfish purposes. I have never before seen such an array of facts establishing such disregard of right with not a word of contradiction or even of explanation.

A discussion of the authority of the District Court to enforce the performance of the duty of redistricting that county is justified alone by the use of the word "may" in the law. The facts which give it the form of discretionary power are amply sufficient to authorize the action and judgment of the district judge who did himself great credit by laying the strong hand of justice on a scheme to pervert official duty to selfish ends.

The law is clearly stated in these words in Vol. 2 of Lewis' Sutherland on Statutory Construction:

"Sec. 636.      *      *      *      In all cases where the words 'it shall be lawful' or the word 'may,' or any equivalent permissive expression, is employed with reference to a court of justice, and independently of any precise conditions expressed or implied, they give the tribunal jurisdiction, leaving it to exercise its discretion according to the requirements of justice in each particular case. Where, with reference to conditions expressed or implied, or independent of any special circumstances, it is manifestly intended that the power should be exercised for the promotion of justice or the public good, such permissive words are imperative in the former case upon the requisite conditions being shown, and in the other upon application by those entitled to invoke the exercise of the power, such circumstances as were needful having been considered by the legislature. Permissive words in respect to courts or officers are imperative in those cases in which the public or individuals have a right that the power so conferred be exercised. Such words, when used in a statute, will be construed as mandatory for the purpose of sustaining and enforcing rights, but not for the purpose of creating a right or determining its character; they are peremptory when used to clothe a public officer with power to do an act which ought to be done for the sake of justice, or which concerns the public interest or the rights of third persons. A direction contained in a statute, though couched in merely permissive language, will not be construed as leaving compliance optional, when the good sense of the entire enactment requires its provisions to be deemed compulsory. Where a statute confers power upon a corporation, to be exercised for the public good, the exercise of the power is not merely discretionary, but imperative, and the words 'power and authority' in such case mean duty and obligation."

We have copied liberally because the sound principle is so ably enforced by different forms of expression. People v. Buffalo, 140 N. Y., 300, 37 Am. St., 563. It would be useless to cite more cases.

A case quite similar to this was before the court in Sansom v. Mercer, 68 Texas, 488, 2 Am. St., 505, in which Judge Gaines, for the court, enforced the rule above declared.

The statute cited was enacted to empower the Commissioners Court for the public good and the benefit of the county free schools to reduce the existing districts, so as to adapt them to the needs of the people. In this case the conditions existed which called for the action and it became a legal duty in the interest of justice, good, honest, clean government, that the wrong so perpetrated to forward selfish ends should be righted in the interest of the people. The courts will compel the performance of the duty imposed.

It is unnecessary to definitely answer the second and third questions. The court had the power to use whatever writs, preventive or corrective, that were needed, to effectually prevent and remedy the wrong done and threatened.