DUBOSE et al. v. WOODS et al.

(Court of Civil Appeals of Texas. San Antonio. Dec. 20, 1913.)

1. MANDAMUS (§ 148*)—PARTIES PLAINTIFF—PRIVATE PERSONS.

Resident citizens of Dunn county, who are qualified voters and owners of real and personal property therein, have sufficient interest to apply for mandamus to compel the commissioners' court of Duval county to perform the duty of dividing the new county of Dunn into commissioner's, justice's, and voting precincts imposed upon that court by the act creating Dunn county in the manner provided for therein.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 289; Dec. Dig. § 148.*]

2. COUNTIES (§ 18*) — CREATION OF NEW COUNTY—DIVISION INTO PRECINCTS.

Under the act creating Dunn county (Acts 33d Leg. [1st Called Sess.] c. 35) and requiring the commissioners' court of Duval county to divide the new county into four convenient precincts for the election of county commissioners and not less than four convenient precincts for the election of justices of the peace and constables and to designate convenient polling places, the division of the county into four commissioners' precincts, which were also designated as justices' and voting precincts, containing, respectively, 250,000, 41,000, 39,000, and 200,000 acres and 500, 70, 50, and 20 voters, one of which precincts contained two and a large part of the third of the three largest towns in the county thus depriving two of such towns of the polling places which they had had for 30 years and requiring the people of such towns to travel long distances to the polling place and justice's court, was so manifestly wrong that the holding of an election in the precincts so provided for the purpose of completing the organization of such county would be enjoined.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 17, 18; Dec. Dig. § 18.*]

3. COUNTIES (§ 18*)—PRECINCTS.

The voting precincts of a new county should be so established as to embrace only territory situated in one commissioner's precinct and one justice's precinct in order that the vote for precinct officers may be determined.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 17, 18; Dec. Dig. § 18.*]

Appeal from District Court, Duval County; W. B. Hopkins, Judge.

Suit by T. M. Dubose and others against S. H. Woods and others. From an order refusing a temporary injunction, plaintiffs appeal. Reversed and remanded.

Dougherty & Dougherty, of Beeville, and Terrell, Walthall & Terrell, of San Antono, for appellants. Hicks, Hicks & Teagarden, of San Antonio, for appellees.

MOURSUND, J. This is an appeal from an order made in vacation by Hon. W. B. Hopkins, district judge of the Twenty-Eighth judicial district of Texas, refusing to grant, upon sworn petition by appellants, who are residents and qualified voters of Dunn county, and owners of real and personal property situated therein, a temporary injunction restraining appellees, O. G. Allen, N. E. Martinez, J. C. Wall, and H. D. Roach, from holding an election on December 23, 1913, for the election of officers, and the location of the county seat, of Dunn county, and restraining S. H. Woods, county judge of Duval county, J. W. Shaw, A. Parr, E. Carrillo, and J. M. Corkhill, county commissioners of Duval county, and their successors in office, from appointing other presiding officers for the holding of said election, and the said S. H. Woods from preparing, or causing to be prepared, ballots for said election and from issuing any election supplies to said election officers.

Plaintiffs allege in substance: That by act of the Legislature the commissioners' court of Duval county was directed to complete the organization of Dunn county, to divide said county into four convenient precincts for the election of county commissioners and not less than four convenient precincts for the election of justices of the peace, and also to designate convenient places in said county where elections shall be held and to order an election to be held for the election of county and precinct officers and for the selection of a county seat, to appoint presiding officers to hold the, election, and it was further provided that said new county shall defray all expenses of perfecting its organization; that said county judge and county commissioners, acting as the commissioners' court of Duval county, divided Dunn county into four parcels, each of which was to be a commissioner's precinct, a justice's precinct, and a voting precinct; a copy of the field notes and a plat showing the precincts so created being attached to the petition.

It is further alleged: That the division so made was arbitrary, unfair, unjust, and unlawful; the various reasons being set out with great particularity, but for the sake of brevity we will only briefly state the substance thereof. The acreage, population, and number of voters in each district are approximated as follows: Precinct No. 1, 250,000 acres, 4,000 inhabitants, of whom 500 are voters; precinct No. 2, 41,000 acres, 350 inhabitants, of whom 70 are voters; precinct No. 3, 39,000 acres, 300 inhabitants, of whom 50 are voters; precinct No. 4, 200,000 acres, 120 inhabitants, of whom 20 are voters. Less than 150 voters will elect three of the county commissioners, while 500 voters will elect the other commissioner, by reason of which fact the government of the county will be taken away from a majority of the voters, and not more than one-third of the voters will have convenient access to the polls. The mileage of public roads is approximately as follows: Precinct No. 1, 125 miles; No. 2, 17 miles; No. 3, 16 miles; and No. 4, 15 miles. Precinct No. 1 is about 26 miles long by 15 wide; No. 2 is about 10 miles long and 7 miles wide; No. 3, about 9 miles long by 7 miles wide; and No. 4, about 24 miles long by 12 in width. That said precincts have been established without regard to symmetry or public convenience. When considered as

justices' precincts, they are created without regard to the rights or conveniences of the public, because in precinct No. 1 there are two towns and part of a third, and litigants will be compelled to travel in many instances at least 25 miles to attend justice's court because said towns are widely distant from each other, and necessarily the court will be held in one of said towns. That, in establishing said precincts as the only election precincts, the commissioners' court flagrantly abused their discretion in order to promote their own interests (three of them being alleged to reside in Dunn county) to secure the selection of the town of Benavides as the county seat by imposing such difficulties upon plaintiffs and other voters, in the exercise of their right of suffrage, as will deter plaintiffs and many other qualified voters from attending such election and voting therein by reason of the expense, inconvenience, and loss of time incident to their participation in such election upon the date fixed for holding the same. That the establishment of said precincts as the sole voting precincts is violative of the constitutional and statutory rights of plaintiffs and other voters, guaranteeing them the exercise of a free suffrage, and would invalidate the election to be held, because a great many voters would be deterred and prevented from attending and participating in the same. Plaintiff Dubose resides near the town of Realitos, which contains about 350 people, and about 500 people reside adjacent to said town. That said town is within five miles of the geographical center of Dunn county and is a competing candidate with Benavides for the location of the county seat. That said town is deprived of a polling place, a right and privilege it has enjoyed for 30 years. That the greater number of the voters of said town and residing adjacent thereto are poor and can ill afford to go to the town of Benavides, designated as the polling place of precinct No. 1, to cast their vote at said election on account of the great inconvenience attendant thereon. That there is only one train a day between the two towns, and the wagon roads are bad, wherefore the voters will be at great expense and inconvenience in going to Benavides to vote. In addition a great many of the voters of the county are illiterate and by reason of that fact, in connection with the large number of voters in said precinct, the voters will be subjected to further delays and inconvenience. Plaintiff Perez resides at Concepcion, a town of about 600 inhabitants and 160 voters, which town has had a polling place for 30 years. That the line between precincts 1 and 2 runs down the main street of said town, placing about one-fourth of the inhabitants in precinct No. 2 and the remainder, including Perez, in precinct No. 1. In precinct No. 2, a hamlet called Mazatlan, containing approximately 50 inhabitants and situated about four or

five miles from Concepcion, has been designated as a polling place. Those voters of Concepcion placed in precinct No. 1 are compelled to travel to Benavides, a distance of about 20 miles, without railroad facilities, and thereby subjected to like inconvenience and expense as those of Realitos. That this was done for the purpose of deterring Perez and many other qualified voters who favor Realitos as the county seat from participating in the election, and, whether done for said corrupt purpose or not, said division has been made in a manner so regardless of the convenience of plaintiffs and other citizens of Dunn county as to be violative of the act creating the county, and an abuse of the discretion of the commissioners' court of Duval county. That the district court will not be held in Duval county until subsequent to the date set for the election in Dunn county, and, unless the defendants are restrained from holding the election, plaintiffs and many other citizens and qualified voters of Dunn county will suffer irreparable injury, and they have no adequate remedy at law to prevent the same. It is also alleged that, if officers are elected for the precincts as laid out, the commissioners so elected will levy taxes, incur obligations, and assess the property of plaintiffs and other citizens, and that the fees of the election officers and the other costs incident to holding the election will become a charge upon Dunn county, and the property of plaintiffs and of other citizens will be liable therefor. Plaintiffs prayed for a temporary injunction, and upon trial that the orders districting the county be reviewed and declared void, and the officers perpetually enjoined from holding any election in said precincts, and for a writ of mandamus directing the said commissioners and county judge to make subdivision of Dunn county into precincts in the manner prescribed by the law creating the county.

### Conclusions of Law.

Under article 5, § 8, of the Constitution of the state of Texas, as amended in 1891, the district court has general supervisory control over the commissioners' courts, with such exceptions and under such regulations as may be prescribed by law, and general original jurisdiction over all causes of action whatever for which a remedy is not provided.

The Legislature, in article 1706 (Statutes of 1911), recognizes the jurisdiction as expressed in the Constitution with reference to supervisory control of commissioners' courts and has made no exception that would destroy the jurisdiction of the district court to supervise the proceedings of a commissioners' court in dividing a newly created county into convenient districts.

Article 4643, Revised Statutes 1911, authorizes the district judge to issue injunctions in a pending cause, when it appears

that some act may be done which would tend to render the judgment ineffectual.

[1] Plaintiffs being resident citizens of Dunn county, qualified voters and owners of real and personal property therein situated have sufficient interest to apply for mandamus to compel the commissioners' court of Duval county to perform the duty imposed upon said court by the act creating Dunn county, in the manner provided for in said act. McLaughlin v. Smith, 140 S. W. 249; same case, 105 Tex. 330, 148 S. W. 288.

[2] The act of the Legislature creating Dunn county (Gen. & Sp. Laws of Texas 1913, c. 35) makes it the duty of the commissioners' court of Duval county to lay off and divide said new county into four convenient precincts for the election of county commissioners and not less than four convenient precincts for the election of justices of the peace and constables, and to designate convenient places in said new county where elections shall be held. The facts alleged in the sworn petition show conclusively that as to neither class of precincts is the division of the county one which is convenient to the people of said county, and in fact such division is so arbitrary and wrong that the courts should not for a moment tolerate the same. It is true that the appellees were given no opportunity by the district judge to answer. Our statute permits the court to refuse or grant a temporary injunction without notice, and naturally emergencies arise in which it becomes necessary to act at once. In this case the judge doubtless failed to give appellees notice because of the shortness of the time, and, while believing that appellants could not maintain the suit, doubtless did not wish to jeopardize their appeal by giving notice and setting the case down for a hearing when the orders made by the commissioners' court speak for themselves, and no excuses or reasons could alter the facts disclosed by the orders entered, nor could denial be made of the existence and location of the different towns situated in the new county. Whether from failure of due consideration or willfully, the districts have not been established with any regard to the convenience of a very large part of the population. When considered as commissioners' precincts, it is manifest that wrong was committed in making the districts largely disproportionate as to acreage and population. After the four commissioners' precincts have been established in a fair manner, it is necessary to establish not less than four justices' precincts, and we cannot conceive of convenient justices' precincts being established which will not place each of the three most important towns in a justice's precinct. Nor can we conceive of any division into voting precincts being fair which fails to create a voting place in each of said towns, as well as such other voting places as may be necessary to enable the voters to participate in an election without unreasonable inconvenience and expense. To deprive the people of Realitos and Concepcion of the right to have a voting place, a privilege they have enjoyed for 30 years, is so unjust and unreasonable, in view of the fact that said towns are two out of the three largest in the county, that it contravenes all ideas of fair play and presents a situation which should not be tolerated in a country recognizing the right of free suffrage and equal rights. It is recited in the emergency clause of the act creating Dunn county that an imperative public necessity exists for the act to take effect from and after its passage because of the great inconvenience to which the people are subjected, who live in the territory composing the new county, in being compelled to travel extraordinary distances to attend to their public and private business at the county seat. Yet probably half of said people, as the voting districts were established by the commissioners' court of Duval county, would be compelled to go long distances in order to vote, whereas formerly they had voting places in their midst.

[3] As voting precincts should be so established as to only embrace territory situated in one commissioner's precinct and one justice's precinct, in order that the vote for precinct officers may be determined, and as each of the towns should, for the convenience of its citizens and those residing in the vicinity, have a justice's court, it appears to us that the districting into convenient districts would be greatly facilitated if the commissioners' precincts should be so established as to throw the three largest towns into separate commissioners' precincts. However, we have no power, nor has the district court, to make the districts, as the commissioners' court has a discretion in the matter which will not be interfered with by the courts when exercised in a reasonable and fair manner. But until the division of the county into precincts is accomplished in a reasonably fair and just manner, with due regard to the convenience of the people, the courts will not hesitate to grant relief.

We are of the opinion that the petition states a cause of action entitling plaintiffs to the temporary injunction refused by the trial court, and therefore the order refusing the same is reversed, and the cause remanded, with instructions to the district judge to forthwith enter an order granting plaintiffs the temporary injunction prayed for by them. In support of our conclusion that the election should be enjoined, we cite, in addition to the citations already made, the following cases: Oden v. Barbee, 103 Tex. 449, 129 S. W. 602; Solomon v. Fleming, 34 Neb. 40, 51 N. W. 304; Kimberly v. Morris, 87 Tex. 637, 31 S. W. 808; Joyce on Injunctions, § 1386.

In order that the status quo of the controversy might not be changed into an elec-

tion contest and complicated by actions of officers who might be elected at the election ordered to be held on December 23, 1913, which election would have been held before a mandate could issue in this case, this court, in aid of its jurisdiction, on December 17th entered a temporary restraining order, which is in all things to remain in full force and effect until the issuance of the mandate of this court.

The judgment is reversed, and the cause remanded.