## ASHBURN et al. v. VIRECA CORPORATION
### et al.
### No. 4414.

Court of Civil Appeals of Texas. Texarkana.
Jan. 25, 1934.

Rehearing Denied Feb. 1, 1934.

R. J. Randolph, of Austin, and H. E. Wassell, of Kermit, for appellants.

A. D. Dyess, of Houston, Golden & Crolcy, of Dallas, Bramlette & Meredith, of Longview, and Wynne & Wynne, of Athens, for appellees.

JOHNSON, Chief Justice.

The following plat may be of assistance in locating the land in controversy with respect to adjoining surveys:

Suit was instituted by appellants, Byrd Ashburn and others, as plaintiffs, against appellees, Vireca Corporation and others, as defendants, in the district court of Gregg county, seeking to cancel and set aside a certain patent issued August 19, 1931, by the state of Texas to M. T. Cole, covering thirty-nine acres of public school land located in Gregg county, which has since 1864 been delineated and designated on the official land map of the state of Texas as the A. Park survey. Appellants, as alleged grounds for seeking cancellation of the Cole patent, claimed that they had on June 29, 1927, by their letter of inquiry, expressed a desire to the land commissioner to purchase the area in controversy, and that by reason thereof and of the laws relating thereto they had acquired and held a prior and superior right to purchase the land at the time it was purchased by and patented to M. T. Cole. The court sustained a general demurrer to plain-

tiffs' petition. Plaintiffs refused to amend. Judgment was entered dismissing the case, and plaintiffs appealed. The facts of the case are fully alleged in plaintiffs' petition, together with certified photostatic copies of the records of the land office of the state of Texas attached and made a part thereof. We will state only the facts upon which the points we will discuss are based.

The land in controversy was surveyed September 10, 1863, by virtue of a land certificate issued to Andrew Park for an unlocated balance of 264 acres. The original certificate was for 640 acres, and there had been two previous locations. The field notes of the survey of September 10, 1863, are as follows: "Beginning at the S. E. corner of the E. H. Grisham Survey from which an ash 4 inch dia bears S. 10 E. 5 vrs. dist a red oak 3 inches dia bears East 5 vrs. dist. Thence East 300 vrs. to a stake on East line of J. M. Meador Survey, from which a pine 18 inches dia bears South 2 vrs. dist a pine 8 inches dia bears West 2 vrs. dist. Thence North with said Meador's line 550 vrs. to his N. W. corner, on the bank of the Sabine River. Thence N. 70 West with same river 325 vrs. to the N. E. corner of the Grisham Survey. Thence South with same Grisham Survey 620 vrs. to the place of beginning."

These field notes were returned, filed and recorded, February 10, 1864, in the land office, and were by the land commissioner delineated on the official land map of the state of Texas, and designated as the A. Park survey. Certain indorsements were noted by the land commissioner on the field notes and on the wrapper containing these field notes and the field notes of another survey of a larger tract made at the same time and by virtue of the same certificate, which indorsements read:

"No transfer to Bradshaw for whom surveys were made. Neither Survey appears surrounded. A former survey having been made and patented by virtue of said headright one of these should be entirely surrounded by other surveys.

"Larger survey does not close by error S. 118 vrs. error E. 69 vrs. Smaller survey (area in controversy) does not close by error S. 41 vrs. Error E. 5 vrs.

"Feby. 12, 1864."

Subsequently the larger survey was resurveyed for the full amount of the certificate, 264 acres, and patented, which exhaustion of the certificate would evidence an abandonment of any intention to patent the smaller A. Park survey, the area in controversy, and there is a notation on the field notes of the smaller A. Park survey reading: "This seems to have been abandoned." However, it does not appear that the field notes were withdrawn from or canceled on the records of the land office, and the records of the survey remained as above described.

In 1918 M. T. Cole purchased the land from Dr. E. L. Walker and wife, Nannie Walker, as a part of a larger tract of land at $12.50 per acre, and subsequently occupied it under the belief that he acquired title by such conveyance; by reason of which facts, upon discovery that it was public school land, M. T. Cole purchased the land from the state as surveyed school land upon payment to the state of a like consideration as he had paid to Walker, and patent was issued to him August 19, 1931, under the provision of section 5 of the Act approved May 29, 1931, c. 271 (article 5421c, § 5, Vernon's Annotated Texas Civil Statutes), reading: "Provided that in all cases where a tract of school land has been occupied by mistake as a part of another tract, such occupant shall have a preference right for a period of six months after the discovery of the mistake, or after the passage of this Act, to purchase the land at the same price paid or contracted to be paid for the land actually conveyed to him."

June 29, 1927, previous to the application of M. T. Cole to purchase the land from the state, the appellants, under the provisions of article 5323, R. S. 1925, addressed to the land commissioner of the state of Texas a letter of inquiry expressing a desire to purchase certain lands, which they claim covered and included the land in question, as unsurveyed public school land; and by reason of which letter of inquiry appellants claim they acquired a right to purchase the land in question, and that such right had been recognized and preserved by the Legislature under the provisions of section 6 of said Act of May 29, 1931 (Vernon's Ann. Civ. St. art. 5421c, § 6), reading: "All applications filed with the Land Commissioner subsequent to June 1, 1927, and prior to October 10, 1929, expressing a desire to purchase unsurveyed public school land, where the official map of the Land Office shows the area applied for not to be included within the boundaries of any previous survey, and an answer that no vacancy existed has been given by the Land Office, are hereby recognized, and all rights thereunder preserved, and the applicant may have the land surveyed by an authorized surveyor of the State."

Appellants' said letter of inquiry, in so far as the pertinent provisions are concerned, reads:

"June 29/27.

"Mr. J. T. Robison, Austin, Texas.

"If the following described areas in Gregg County is vacant or unsurveyed and subject to sale it is my intention to purchase it in accordance with Article 5323, Revised Statutes 1925. Situated as follows, distance from Co Seat. (The letter contained twenty-nine inquiries).

"No. 24. 20000 varas West. Bounded on the North by, Vacant Listed as No. 26 in inquiry. On the East by Judson M. Meador. On the South by Samuel Brooks. On the West by A. Park."

On the margin of inquiry No. 24 is the notation: "No vacancy." To this letter of inquiry, the land commissioner answered, July 18, 1927, individually discussing a number of the inquiries, but did not individually mention inquiry No. 24, nor discuss it further than as follows: "For every inquiry or tract described in your letter other than those individually mentioned above, you are advised according to tne maps and other records of this office."

By virtue of the above it is claimed by appellants that they acquired a right to purchase the land in controversy, which was recognized and preserved by Section 6 of the Act of May 29, 1931 (Vernon's Ann. Civ. St. art. 5421c, § 6), and which was prior and superior to the right of M. T. Cole to purchase the land, at the time it was purchased by and patented to M. T. Cole August 19, 1931; and that they had the right to have the Cole patent canceled in order that they may prosecute their desire to have the land patented to them.

Appellees, contending that the facts alleged show that appellants are not entitled to the relief sought, among others make the following contentions, in substance: (1) That appellants' letter of inquiry was insufficient in description of land to acquire any right to purchase the land in controversy; (2) that the letter of inquiry was insufficient, in that it was an inquiry under article 5323 to purchase unsurveyed school land, whereas the land in controversy was surveyed school land; (3) that, by reason of his previous purchase and occupancy, M. T. Cole had "a preference right" to that of other applicants under the Act of May 29, 1931.

Concerning appellees' first contention, it is claimed by the appellees that appellants' letter of inquiry does not designate or describe any land, and that it does not describe any land covered by the Cole patent. Article 5323, R. S. 1925, under which appellants' inquiry was made, provides: "The inquiry shall give the applicant's post-office address, state in effect that he desires to buy the land if it is for sale and sufficiently designate it." It will be noted that in appellants' letter of inquiry the land sought to be purchased by them is bounded on the east by the J. M. Meador survey and on the west by the A. Park survey, and by reference to the field notes above copied of the A. Park survey it will be observed that the east line of the A. Park survey calls for, and coincides with, the west line of the J. M. Meador survey; hence no land existed between the two surveys. It is contended by appellants that the A. Park survey was an illegal survey and did not in law exist, and therefore the call in their letter of inquiry "bounded on the West by the A. Park" should be disregarded, and that, since the land commissioner rejected their inquiry No. 26, only the calls for the Meador on the east and Brooks on the south should be considered; therefore their letter of inquiry designated the land sought to be purchased thereby as all the unsurveyed school land north of the Brooks and west of the Meador surveys. Should it be determined that the A. Park survey is an invalid survey, appellants' call therefor, in designating the land sought to be purchased in their letter of inquiry, could not be disregarded. Kirby Lbr. Co. v. Gibbs Bros. & Co. (Tex. Com. App.) 14 S.W.(2d) 1013, 1014. In which case the point under consideration appears to have been decided adversely to appellants' contention, from which we quote: "A call for an adjoinder is like a call for a natural or artificial object, and any conflicting call for course, distance, or acreage, and the like, must yield. * * * Where that call, as here, is for an adjoining survey, it can make no difference that such survey is for any one reason invalid. It is not a question of validity of the survey called for, but rather one of the corner or line of such so-called survey. The beginning point is not a legal concept, but a physical object. Whether the survey thus called for is void or valid, or the line thereof is legal or illegal, is of no importance."

The letter of inquiry or application to purchase will not extend to land outside of the boundaries of the land therein designated, Texas Mex. Ry. v. Scott, 60 Tex. Civ. App. 482, 129 S. W. 1170; Winder v. Williams, 23 Tex. 601.

Hence it appears that appellees' contention

that appellants' letter of inquiry was insufficient in designation of land to acquire any right to purchase the land in controversy is well taken. And it is thought that the survey of September 10, 1863, the facts concerning which we have hereinbefore recited, was a sufficient severance from the public domain to classify it as surveyed as distinguished from unsurveyed land. Eyl v. State, 37 Tex. Civ. App. 297, 84 S. W. 607; Barrow v. Gridley, 25 Tex. Civ. App. 13, 59 S. W. 602, 913. This was the classification subsequently given to such lands by the Legislature, as defined in section 3, art. 5421c, Vernon's Ann. Texas Civil Statutes.

Should appellants have acquired a right to purchase the land by their letter of inquiry, of June 29, 1927, they were dependent for the survival of such right on section 6 of the Act of May 29, 1931 (Vernon's Ann. Civ. St. art. 5421c, § 3), the terms of which we have above quoted, whereas, by the terms of section 5 of the act (Vernon's Ann. Civ. St. art. 5421c, § 5), M. T. Cole, as occupant in good faith of the land, was given "a preference right" to purchase it, which means a right superior and to the exclusion of others; hence appellants' right, if any, to purchase the land was concluded by the exercise of the "preference right" given M. T. Cole.

We are of the opinion that the learned trial judge was not in error in sustaining the general demurrer to plaintiffs' petition.

The judgment of the lower court is affirmed.