C. A. BARBER V. BASCOM GILES, COMMISSIONER OF THE GENERAL LAND OFFICE.

No. A-1433. Decided February 18, 1948.
(208 S. W., 2d Series, 553.)

402

*Small & Small,* of Austin, for relator.

*Price Daniel,* Attorney General, *H. D. Pruett, Jr.,* and *Ben H. Rice, III,* Assistant Attorney General, for respondent.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

Relator prays for a writ of mandamus to compel resepondent, the Commissioner of the General Land Office, to issue to him, pursuant to the first part of Section 5 of the 1931 Public School Land Sales Act, a patent to a tract of land containing 18.77 acres in Panola County. Respondent's refusal to issue the patent is based upon his opinion that the tract of land cannot be patented to relator and is subject only to lease because it is surveyed public school land within five miles of a well producing gas in commercial quantities.

The tract of land was surveyed for S. M. Callahan and the field notes were filed in the General Land Office on January 30, 1879, both Callahan's designation of the land as homestead and the field notes making reference to an Act to regulate the disposition of Public Lands approved August 12, 1870. 6 Gammel's Laws, pp. 242-244. That Act was amended or rewritten, but the changes affect neither the validity of the steps taken by Callahan nor the questions involved in this case. See Chapter 67, Acts Regular Session, 13 Legislature, 7 Gammel's Laws, pp. 553-554; Articles 3937-3951, R. C. S. of 1879; Articles 4160-4174, R. C. S. of 1895. The original field notes of the tract surveyed for Callahan describe it as containing 26 acres, but the area was by resurvey reduced to 18.77 acres. Neither Callahan nor anyone claiming under him has filed in the General Land Office proof of three years' occupancy of the land as required by the law under which it was designated and surveyed. Relator and his predecessors in title have held and claimed the Callahan survey in good faith and have had the same enclosed with other lands for more than thirty years.

The School Land Sales Act of 1931, while not a complete rewriting of the statutes on the subject, is a comprehensive act making a number of material changes in the pre-existing statutes. Its second section authorizes sales of surveyed land on the first day of any month, after advertisement, to the person offering the highest price, with the provision that "all such land within five miles of a well producting oil or gas in commercial quantities shall be subject to lease only, and the surface rights shall not be sold." Section 3 defines surveyed land and unsurveyed land within the terms of the Act. Section 4 provides that all land shall be sold without condition of settlement, for

a minimum price of not less than $1.00 per acre and with reservation of 1/16 of all minerals as a free royalty, except that a royalty of 1/8 of all sulphur shall be reserved. Section 6 prescribes the method and terms for selling unsurveyed land "not situated within five miles of a producing oil or gas well." Sections 8, 9, 10 and 12 relate to the leasing of the lands for oil and gas and other minerals. Section 5, under the first part of which relator claims the right to a patent, is as follows:

"Any headright survey, homestead donation, preemption sursurvey, scrip survey or other survey heretofore awarded or sold, which survey has been held and claimed in good faith by any party for a period of ten years prior to the date of application for patent and which surveys cannot be patented under existing laws, may be patented on payment of one dollar ($1) an acre to the Land Commission. In such cases the patent shall be issued to the owner now of record in the General Land Office and inure distributively to the true and lawful owners of the land, provided that in all cases where a tract of school land has been occupied by mistake as a part of another tract, such occupant shall have a preference right for a period of six months after the discovery of the mistake, or after the passage of this Act, to purchase the land at the same price paid or contracted to be paid for the land actually conveyed to him." Chapter 271, General Laws, 42nd Legislature (Vernon's Sayles Annotated Civil Statutes, Article 5421c).

The language used, or part of it, suggests that the first part of Section 5 is intended as an act of validation. This Court has been generous in upholding legislation validating titles. See, for example, Greene v. Robison, 109 Texas 367, 381-382, 210 S. W. 498; State v. Bradford, 121 Texas 515, 546-549, 50 S. W. (2d) 1065. However, the title, or more correctly the claim, originating in the designation by Callahan and the survey made for him in 1879 was not subject to validation when the Sales Law of 1931 was enacted, that is, it was not subject to mere validation without the payment of purchase money for the land. By the terms of the Homestead Donation Act (Article 4171, R. S. 1895), all rights under the original designation and survey terminated and the land became vacant, unappropriated public land when Callahan or his assignee failed to make satisfactory proof of three years' occupancy of the land; and by the terms of the Act of February 23, 1900 (Chapter 11, Acts First Called Session, 26th Legislature) the land was set apart and granted to the public school fund. After the land had thus been set apart to the public school fund the mandate of Sec-

tion 4 of Article VII of the Constitution forbade its disposition otherewise than by sale. Gallup v. Thacker, 103 Texas 310, 126 S. W. 1120; Armstrong v. Walker, 123 Texas 508, 73 S. W. (2d) 520. The tract of land, the subject of controversy herein, is surveyed land within the definition contained in Section 3 of the 1931 Act, field notes for·it being on file in the General Land Office.

■ The first part of Section 5 of the 1931 Sales Act may rea- sonably be construed as authorizing sales of the land to which it applies, giving to the persons who have held and claimed the land in good faith for ten years preference rights to buy it at the price named, and thus construed it is in our opinion valid. The word sell or sale is not used, but a sale is effected when one to whom the preference right is given makes application for the patent, showing his qualification, with payment of the pur- chase money, and the Commissioner issues the patent, which completes the purchase and is the evidence of the acquisition of title from the State. Preference rights to purchase public school land have often been given by acts of the legislature to desig- nated classes of persons, and such legislation has been su- stained as the valid exercise of legislative power. "When and to whom the lands shall be sold, is a question of sound policy and belongs to the policical department." Glasgow v. Terrell, 100 Texas 581, 102 S. W. 98. See also: Wright v. Gale, 104 Texas 450, 140 S. W. 91; Judkins v. Robison, 109 Texas 6, 10- 11, 160 S. W. 955; Wintermann v. McDonald, 129 Texas 275, 278, 102 S. W. (2d) 167, 104 S. W. (2d) 4; Ashburn v. Vireca Corp., 68 S. W. (2d) 343.

This question, which is one of construction, is presented for decision: Is the right to purchase given by the first part of Section 5 limited by the provision of Section 2 which forbids the sale of surveyed public school land situated within five miles of a well producting oil or gas in commercial quantities, re- serving it for lease only?

In his concise but thorough brief, relator first stresses the fact that the legislature, in granting several preference rights of purchase in sections five and six of the Act of 1931 and in other statutes, has been moved by a purpose or policy to per- mit land owners, who have long occupied their lands under the good faith belief that they owned all of it, to have preference rights to acquire small tracts possessed by them which are found to belong to the state. It is argued that the purpose or policy thus evidenced cannot be fully accomplished as far as the land described in the first sentence of Section 5 is concerned unless

the preference right is permitted to be exercised by all good faith claimants and possessors of such land, whether it is or is not within five miles of a producing well.

Relator, in further argument, finds in the language of the first part of Section 5, deliberately chosen, the expression of an intention on the part of the legislature to set up an entirely different method of disposition of a limited or select class of public lands and to make the preference right applicable to any and all lands in that class unaffected by the provisions of Section 2 as to the method of selling and the limitation upon selling the lands that are offered for sale to the public. The language of the two sections lends support to the argument. Section 2, which contains the prohibition against sales of land within five miles of a producing well, prescribes the method of selling surveyed land, after advertisement, to any person who may offer the highest price. Section 5 in its first sentence grants a preference right to purchase *any* headright survey, homestead donation and other designated survey theretofore awarded or sold, making the preference right available to a certain class of persons; it fixes the purchase price, and it authorizes the issuance of a patent as the method of completing title, with no use of the word "sale" and with no reference to Section 2 or to the limitation that it imposes.

On the other hand, respondent insists that the important policy properly applicable to the instant case, clearly declared both as to surveyed lands and unsurveyed lands, is that they shall not be sold when they are situated within five miles of a producing oil or gas well. He argues that the preference rights granted in Section 5 can be sustained only as rights to purchase, and that the prohibition against the sale of land within five miles of a well, which is stated without qualification or exception in Section 2 and in Section 6, applies to all sales of land, whether surveyed or unsurveyed and however classified.

It is true that both of the two purposes or policies of the legislation cannot be given full effect. If relator's contention is sustained, some of the land included in the Act and situated within five miles of a producing well may be sold. If respondent's contention is sustained, some of those who have for ten years or more possessed and claimed in good faith headright surveys, homestead donations or other surveys described in the first sentence of Section 5 will be denied the privilege of ac-

quiring by purchase from the State title to the land that they have in good faith believed they owned.

The problem is to give the Act the interpretation that most nearly accomplishes the intention of the legislature, finding that intention in the words of the Act and looking to all of its terms. Simmons v. Arnim, 110 Texas 309, 324, 220 S. W. 66. The solution of the problem is difficult because of the absence of preciseness and particularity in the language of the Act and because of the somewhat conflicting policies or purposes disclosed by its terms. The question is so close that one construction could probably be as reasonably supported as the other. We have reached the conclusion, however, that for the sake of consistency in decisions the same ruling should be made as to sales under the first part of Section 5 as that which was made as to sales under the second part of the same section in Caples v. Cole, 129 Texas 370, 102 S. W. (2d) 173, 104 S. W. (2d) 3.

In that case Cole applied to buy a tract of school land under the preference right given by the last part of Section 5 to all persons who have occupied a tract of school land by mistake, believing it to be part of another tract. The Commissioner sold and patented the land to Cole, although it was within five miles of a producing well. The court, after quoting section 5 and those parts of Sections 2 and 6 which forbid the sale of land when situated within five miles of a well, held that the Act clearly forbade the sale, and that the Commissioner was without authority to make it. In the opinion on rehearing in that case it was stated that the facts of the case did not bring before the court for construction the first part of Section 5, and that no opinion was expressed upon the question whether land described therein could be acquired by purchase if situated within five miles of a producing well. See also Wintermann v. McDonald, 129 Texas 275, 102 S. W. (2d) 167, 104 S. W. (2d) 4.

■ Most of the arguments made in behalf of relator would apply as well to the last part of Section 5, that is, to a construction of it as giving a preference right of purchase unaffected by the prohibition of sales of land within five miles of a well. It was vigorously argued in briefs filed in the Caples-Cole case that the preference right provisions of Section 5 there involved were complete in themselves, were clearly expressed, were made applicable in all cases where a tract of school land had been occupied by mistake, and that they were not limited by the provisions of Sections 2 and 6. The last part of Section 5, like the first part, relates to a certain class of lands and gives the

preference right only to persons who have occupied them, fixes the price to be paid, and makes no reference either to Section 2 or to Section 6, or to the limitation contained in those sections. The word purchase is used in the last part of Section 5 and not used in the first part; but, as we have held, a sale is nevertheless effected when a patent is issued under the first part of the section, so that the transactions in which both preference rights given by the section are exerecised are in fact sales within the terms of the Act. In our opinion there is not sufficient difference between the provisions of Section 5 as to the two preference rights to justify a ruling that the prohibition against the sale of land within five miles of a well does not apply to sales made under the preference right given in the first part of the Section, after the court has held that the prohibition does apply to sales made under the preference right given in the last part of the Section.

The writ of mandamus is refused.

Opinion delivered February 18, 1948.

No motion for rehearing filed.