

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

May 21, 1958

Honorable Bill Allcorn
Commissioner
General Land Office
Austin, Texas

Opinion No. WW-436

Re: Whether a certain tract
of land in Bosque County
may be patented under
Article 5421c, Section
5, V.C.S.

Dear Mr. Allcorn:

 The opinion request from your office states that on January 19, 1838, the Board of Land Commissioners of Bastrop County issued to Thomas H. Mays a headright certificate for three fourths of a league and one labor of land. Patent was issued for three fourths of a league and in 1858 a certificate for the unlocated balance of one labor was issued.

 The Constitution of 1876, adopted by the voters on February 15, 1876 provided in Section 2 of Article XIV that "all unsatisfied genuine land certificates now in existence shall be surveyed and returned to the General Land Office within five years after the adoption of this Constitution, or be forever barred". Subsequent to the expiration of the five year period, on March 24, 1881, an application under said certificate was filed with the county surveyor requesting the survey of a labor of land. County surveyor S.J. Siddall promptly made the survey and on April 6, 1881, the application, field notes and certificate were filed in the General Land Office as shown by the endorsements thereon. An official file on said survey was set up in the Land Office, being designated as "File 2060, Thomas H. Mayes, Milam 1st Class, 177 acres," and said survey is shown on the official Land Office map of Bosque County.

 You request our answer to two questions:

 "(1) Is the tract of land still classified as a headright survey, or by the Act of February 23, 1900, did it become Free Public School Land?

 "(2) Can it now be patented under Article 5421c, Section 5, V.C.S.?"

Article VII, Section 2 of the present Texas Constitution set aside certain lands, including one half of the public domain of the State, for a "Perpetual Public School Fund". Under the Act of February 23, 1900, (Acts, 26th Leg., 1st C.S., Ch. 11), the balance of the unappropriated public domain, with the exception of certain lakes, bays and islands, was in turn conveyed to the School Fund. And see Articles 5416 and 5415a, V.C.S.

Because the certificate was not surveyed and returned within the five years as required by the Constitution, supra, the survey was ineffective as a headright survey and the land remained a part of the public domain. New York and Texas Land Company v. Thompson, 83 Tex. 169, 17 S.W. 920 (1891). Under Article 5416, R.S., the land in question belongs to the State Permanent School Fund. We agree with you that the land cannot now be patented under the headright certificate.

Section 5 of Article 5421c, V.C.S., provides in part as follows:

"Any headright survey . . . heretofore awarded . . . which survey has been held and claimed in good faith by any party for a period of ten years prior to the date of application for patent and which survey cannot be patented under existing laws, may be patented on payment of One Dollar ($1.00) an acre to the Land Commissioner."

Under Section 10, General Provisions, Constitution of the Republic of Texas, each white man who was head of a family and who resided in Texas on the day of the Texas Declaration of Independence was entitled to a league and labor of land. By the act of December 14, 1837, 1 Gam. 1404, a Board of Land Commissioners was set up in each county to pass on land applications and to issue land certificates to those entitled thereto under such constitutional provision. The certificate here under consideration was for less than a league and labor of land. However, certificates for amounts less than that stated in the Constitution have been upheld as valid. State v. Sullivan, 9 Tex. 156; Hill v. Moore, 85 Tex. 335, 19 S.W. 162.

Section 5 of Article 5421c was discussed at length in Barber v. Giles, 146 Tex. 401, 208 S.W.2d 553 (1948), a case whose facts are similar in several respects to the facts you present. Field notes were filed in the General Land Office in 1879 under an 1870 law authorizing grants to settlers of homestead tracts. Article 4171, R.S. 1895, provided for forfeiture of such a grant for failure to file an affidavit of

three years' occupancy of the homestead tract. The land
having been forfeited for such failure, the long-time pos-
sessor of the land demanded the right to purchase under
Section 5 of Article 5421c.

In discussing said section, the Court said at
page 554:

"The language used, or part of it, sug-
gests that the first part of Section 5 is in-
tended as an act of validation. This Court
has been generous in upholding legislation
validating titles. . . . By the terms of the
Homestead Donation Act, Article 4171, R.S.
1895, all rights under the original desig-
nation and survey terminated and the land
became vacant, unappropriated public land
when Callahan or his assignee failed to
make satisfactory proof of three years' oc-
cupancy of the land; and by the terms of the
Act of February 23, 1900, . . . . the land was
set apart and granted to the public school
fund. After the land had thus been set apart
to the public school fund the mandate of Sec-
tion 4 of Article VII of the Constitution,
Vernon's Ann.St., forbade its disposition
otherwise than by sale. . . The tract of
land, the subject of controversy herein, is
surveyed land within the definition contained
in Section 3 of the 1931 Act, field notes for
it being on file in the General Land Office.

"The first part of Section 5 of the 1931
Sales Act may reasonably be construed as au-
thorizing sales of the land to which it applies,
giving to the persons who have held and claimed
the land in good faith for 10 years preference
rights to buy it at the price named, and thus
construed it is in our opinion valid. . . Pre-
ference rights to purchase public school land
have often been given by acts of the legisla-
ture to designated classes of persons, and
such legislation has been sustained as the valid
exercise of legislative power. 'When and to whom
the lands shall be sold, is a question of sound
policy and belongs to the political department'."

Whether or not the Thomas H. Mays survey was a
"headright" survey heretofore "awarded" is our question. Your
office informs us that in the early practice of the General
Land Office, no formal "award" was made prior to the issuance

of a patent. A location was simply made on vacant public domain and the field notes plus the certificate were filed in the General Land Office. In Stubblefield v. Hanson, 94 S.W. 406 (Tex.Civ.App. 1906, error ref.), it is said:

> "No question is raised as to the validity of the warrant, and the survey and location of the land by virtue thereof was not controverted. This was sufficient to sever the land from the public domain and vest title in the owner of the warrant for whom the location and survey was made, and is sufficient title to authorize the maintenance of an action of trespass to try title."

Technically, of course, no award of a headright survey was accomplished because the certificate under which the survey was made was barred by limitation under the constitutional provision. The survey hence was invalid. Nevertheless, the field notes, along with the headright certificate, were received and filed in the General Land Office, and they have never been cancelled. Apparently no question as to the validity of such survey has been raised in over three quarters of a century. The survey appears on the official Bosque County map in the General Land Office. It was not the intention of the statute under consideration to give a preference right to purchase a survey previously awarded or sold when such previous award or sale was made in accordance with law in all respects. To the contrary, Section 5 specifically states that it applies only to surveys which "cannot be patented under existing laws". This presupposes a flaw in the title of the buyer or awardee of such serious proportion as to prevent the issuance of a patent.

The purpose of Section 5 was to grant a preference right to purchase for a dollar an acre to one who in good faith reliance upon the survey had held and claimed the land for 10 years. Our Supreme Court in Barber v. Giles, supra, refers to Section 5 as an "act of validation" and says that said court "has been generous in upholding legislation validating titles", citing cases upholding the Relinquishment Act and the Small Bill, respectively. Giving the statute a liberal construction, as appears to be authorized by the above statement, we hold that the Mays Survey may be patented upon a compliance with the terms of Section 5, Article 5421c, not because the headright survey was valid but because such invalid survey, when combined with 10 years good faith possession thereunder, gives to the good faith claimant the right to buy at the stated price the land he had long thought that he owned.

## SUMMARY

The Texas Constitution provides that existing land certificates surveyed more than five years after the adoption of the Constitution are forever barred. A survey under an 1858 headright certificate filed in the Land Office after the expiration of said five year period is ineffective, and the land remains a part of the public domain, being dedicated to the State Permanent School Fund under Article 5416, R.S. The land may, however, be patented under Section 5, Article 5421c, V.C.S.

Yours very truly,

WILL WILSON
Attorney General of Texas

By J. Arthur Sandlin
J. Arthur Sandlin
Assistant

JAS:bh

APPROVED:
OPINION COMMITTEE

Geo. P. Blackburn, Chairman

J.C. Davis, Jr.
Milton Richardson
Edward Cazares

REVIEWED FOR THE ATTORNEY GENERAL
BY:
W.V. Geppert