**TEXAS LIQUOR CONTROL BOARD,**
Appellant,

v.

**FALSTAFF DISTRIBUTING COMPANY OF HOUSTON et al., Appellees.**

No. 14091.

Court of Civil Appeals of Texas.

Houston.

May 9, 1963.

Will Wilson, Atty. Gen., when appellant's brief was filed, Waggoner Carr, Atty. Gen., when this case was submitted, Norman Suarez, Irwin R. Salmanson, Asst. Attys. Gen., Austin, for appellant.

Jake Jacobsen, Austin, Leon Jaworski, W. H. Vaughan, Jr., Alton F. Curry, Houston, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, of counsel, for appellees.

Clark, Thomas, Harris, Denius & Winters, Martin Harris, Mary Joe Carroll, Austin, for amicus curiae in support of appellant.

COLEMAN, Justice.

This is an appeal from the judgment of the District Court of Harris County, Texas, permanently enjoining the enforcement of orders of the Texas Liquor Control Board suspending the distributor's license of Falstaff Distributing Company of Houston for forty-five days, and the agent's beer license of George Willis.

The principal question involved is whether or not there is a right of appeal to the courts from an order of the Administrator of the Texas Liquor Control Board *suspending* such licenses.

No question was raised at the trial of this case as to the procedural regularity of the proceedings before the Deputy Administrator. Appellee presented evidence before the Deputy Administrator that the offenses with which it was charged did not occur. There were affidavits before the Deputy Administrator which reflected two violations of the Texas Liquor Control Act. At the trial in the District Court appellant presented a plea to the jurisdiction of the court based on its contention that Section 22 of Article 667, Vernon's Penal Code, prohibited appeals from suspension orders and prohibited suits of any nature seeking to restrain the Board or Administrator or any other officer from enforcing an order of suspension. The trial court denied this plea and proceeded to hear evidence offered by appellee. Appellant declined to offer any evidence and the trial court entered its judgment permanently enjoining the orders.

Appellant has urged Three Points of Error: (1) that the trial court erred in assuming jurisdiction over the purported appeals since they were from orders suspending licenses; (2) that the trial court erred in its conclusion that the suspensions were tantamount to cancellation; and (3) that the trial court erred in enjoining the enforcement of a criminal statute.

The principal question is the effect to be given to that portion of Sec. 22, Art. 667, Vernon's Penal Code, reading:

"No appeal shall lie from an order of suspension of license. No suit of any nature shall be maintained in any Court in this State seeking to restrain the Board or Administrator or any other officer from enforcing any order of suspension issued by the Board or Administrator; * * *."

The problem is raised by the fact that Section 14 of Article 666, Vernon's Penal Code, provides:

"Unless specifically denied herein an appeal from any order of the Board or Administrator refusing, cancelling, or suspending a permit or license may be taken to the District Court of the County in which the aggrieved licensee or permittee, or the owner of involved real or personal property may reside."

The first comprehensive act regulating the manufacture, distribution and sale of intoxicating beverages was enacted as House Bill 77 at the Second Called Session of the 44th Legislature in 1935. General Laws of Texas, 44th Leg., 2nd Called Session, p. 1795 et seq. Section 14 of this Act provided for an appeal to the District Court from any "decision, rule, or order of the Board." The Board was given no authority to suspend licenses issued to those engaged in the manufacture, distribution or sale of beer, although authority was given the Board to cancel or suspend permits to engage in the liquor business under certain conditions. A clear distinction was made in this Act between "permits" required to engage in the liquor trade and "licenses" required to carry on trade in beer, which has been followed generally in subsequent amendments.

In 1937, at the regular session, the 45th Legislature enacted a law amending the Liquor Control Act of the 44th Legislature. This Act contained numerous amendments to Section I and completely rewrote Section II of the original Act. Section 14 of Art. I of the original Act was amended to read as it now appears in Section 14 of Art. 666, V.P.C., and Section 22 of Article II of the Amendatory Act has been codified as Section 22, Art. 667, V.P.C. By the amendatory Act the Board was authorized to suspend beer licenses in two instances. Section 21 authorized suspension of the license of a *retail beer dealer* for thirty days in the event an act constituting a breach of the peace occurred upon the prem-

ises covered by the license, and further provided that at the expiration of the period the license should be revoked unless the licensee should, during the period, show to the satisfaction of the Board or Administrator that the act was beyond his control and did not result from his improper supervision of the conduct of persons permitted by him to be on the premises. Then followed Section 22 providing:

"Any order of the Board or Administrator cancelling a license shall have the effect that it shall immediately be unlawful, after notice thereof is given, for the holder of such cancelled license to sell beer for a period of one year thereafter except during the period that the order of cancellation is superseded pending trial, or unless he shall prevail in any final judgment, rendered upon appeal as herein provided. Appeals from decisions or orders of the Board or Administrator cancelling or refusing a license may be had under the same conditions and provisions prescribed in Section 15 of Article I of this Act.

"No appeal shall lie from an order of suspension of license. No suit of any nature shall be maintained in any Court in this State seeking to restrain the Board or Administrator or any other officer from enforcing any order of suspension issued by the Board or Administrator; and if at any hearing thereon it be shown to the satisfaction of the Board or Administrator that any alcoholic beverage was sold on or from the premises covered by a license during the period of suspension, then such proof shall be sufficient to warrant cancellation of the license.

"The cancellation or suspension of any license shall not excuse nor relieve the violator from the penalties provided in this Article."

A number of causes sufficient to authorize the Board or Administrator to cancel licenses to sell beer were set out in Section 19 of the amendatory Act and the Board or Administrator was authorized to suspend the license of any *manufacturer* of beer when such licensee does business in violation of the Act or the rules and regulations of the Board until the licensee obeys all *lawful* orders of the Board requiring such licensee to cease and desist from such violations. By amendment in 1943, Section 19A was added to Art. 667, V.P.C., permitting suspension of licenses, at the discretion of the Board, in all instances where cancellation was previously provided.

Numerous grounds for the suspension of permits to sell liquor are enumerated in Section I of the amendatory Act. In many instances the causes for *suspension or cancellation* of permits are duplicated in the causes for *cancellation* of licenses.

Section II of the amendatory Act made specific provision for appeal to the District Court from the action of a county judge, the Board or the Administrator in denying an application for a beer license. It set out the procedure and venue for such an appeal and provided for a trial de novo. Art. 2, Sec. 6, Acts of the 45th Leg., Reg.Session, General Laws of Texas, p. 1101. No similar provision is found in Section II regarding the cancellation and suspension of a license to sell beer. It appears both from the language used in Section 14 of Art. I and from a consideration of the entire amendatory Act of 1937 and the provisions of the original Act of 1935, that the right to appeal, and the provisions pertaining to procedure, venue and trial de novo, contained in Sec. 14 applied to beer licensees as well as to holders of liquor permits.

Considered alone that provision of Sec. 22, Art. II of the amendatory Act providing that no appeal shall lie from an order of suspension of license conflicts with the provision of Sec. 14 of Art. I granting appeals from orders suspending licenses unless specifically denied. The provision of Sec. 22 was not worded as a specific denial, but as a general denial, of the right to appeal from any order of suspension of a license. A specific denial of the right to appeal from an order of cancellation or

suspension is contained in Sec. 24, Art. I of the amendatory Act of 1937.

It is a cardinal rule for the construction of a statute that all of its provisions should be construed together, and effect given to all if possible. Lufkin v. City of Galveston, 63 Tex. 437; Spence v. Fenchler, 107 Tex. 443, 180 S.W. 597; Martin v. Sheppard, 129 Tex. 110, 102 S.W.2d 1036. The court should determine the purpose of the legislature and give some effect to every express declaration of legislative intent. Citizens National Bank of Hillsboro v. Graham, 117 Tex. 357, 4 S.W.2d 541; Texas Bank & Trust Co. v. Austin, 115 Tex. 201, 280 S.W. 161. In the case of conflict between a general and a special provision of a statute, the special provision prevails. Nelson v. Texas Employment Commission, Tex.Civ.App., 290 S.W.2d 708, error ref.

In National Surety Corporation v. Ladd, 131 Tex. 295, 115 S.W.2d 600, the Supreme Court of Texas said:

"In a statute like the one before us, it is difficult to define in detail an exact rule for every question that may be presented in the course of the administration of such statute. The dominant objects sought to be expressed in statutes can be stated only in general terms, and the rule of common sense should govern those called upon to construe and enforce them. It is impossible to pick out certain words or phrases or sentences, and detach them from the context of the law, and when thus isolated define them and arrive at the intention of the Legislature expressed in the law. A statute should be construed as a whole in order to arrive at the purposes for which it was enacted.

"Courts are not at liberty to thwart the plain intention of the Legislature expressed in a law that is constitutional, and where the intention is plain the law will be enforced, regardless of the consequences. But where the intention is not clearly expressed in the statute, the rule applies which is stated in 59 Corpus Juris, page 969, as follows: 'Where, however, the intention of the legislature is so inadequately or vaguely expressed that the court must resort to construction, it is proper to consider the results and consequences of any proposed construction, and the court will, if possible, place upon the statute a construction which will not result in injustice, oppression, hardship, or inconvenience, unreasonableness, prejudice to public interest, or absurd consequences.'"

In Lufkin v. City of Galveston, supra, Chief Justice Willie, speaking for the Court, said:

"It is a cardinal rule in the construction of constitutions and statutes that the whole instrument must be taken together—the whole scheme had in view by the law-making power must be understood and carried out; and where there are apparent conflicts or inconsistencies between different parts of the instrument, that construction must be adopted which will give effect to every part, rather than that which will render any portion nugatory and of no avail.

"As a natural result of this principle, it follows that where in one section a general rule is prescribed, which without qualification would embrace an entire class of subjects, and in another section a different rule is prescribed for individual subjects of the same class, the latter must be construed as exceptions to the general rule, and be governed by the section which is applicable to them alone.

"This gives effect to both sections, and prevents the otherwise necessary result that the special section would entirely fail to have any force whatever. Erwin v. Blanks, 60 Tex., 583; Warren v. Shuman, 5 Tex. [441] 442; Sedgw. on Con. & Stat. Law, 242; Vattel's Rules of Construction, No. 8."

A reading of the entire amendatory Act of 1937 convinces us that the legislature used the word "license" or "licensee" with reference to beer and the word "permit" or "permittee" with reference to wine, malt liquor or distilled spirits. The provision of Sec. 22, Art. II, of the amendatory Act (Art. 667–22, V.P.C.) denying the right of appeal had reference to an appeal from the suspension of a beer license. The provisions of Sec. 14, Art. I, of the amendatory Act (Art. 666–14, V.P.C.) was intended to apply to appeals by any permittee or licensee. With the exceptions previously noted, persons holding licenses to sell beer were liable to be penalized for violations of the Act or the regulations of the Board by cancellation of the license in addition to fines and bond forfeitures. No significant improvement in the conciseness or intelligibility of the Act would have been made by a *general* provision denying appeals from orders suspending licenses instead of separate provisions specifically denying such appeals in each instance where such suspensions were authorized.

■ A statute must be given the interpretation which most nearly accomplishes the legislature's intention as ascertained from the words of the statute and all of its terms. Barber v. Giles, 146 Tex. 401, 208 S.W.2d 553.

Section 19, Art. II, of the amendatory Act of 1937 deals with the causes for cancellation of licenses and Section 20 deals with the procedure for hearing and notice. Section 21 authorizes the suspension of the license of a retail beer dealer where a breach of the peace occurs on his premises and for cancellation if he fails to exonerate himself of responsibility for the occurrence. Section 22 is referable to both Sections 20 and 21 in that it deals with the effect of the cancellation of a license, and specifically authorizes appeals from orders cancelling or refusing a license, and in a separate paragraph specifically denies the right to appeal from an order suspending a *license*. In the same paragraph it is

provided that proof of the sale of any "alcoholic beverage" from the premises covered by a *license* during the period of suspension shall be sufficient to warrant cancellation of the suspended license. The final paragraph of Section 22, providing that *cancellation* or *suspension* of any *license* shall not relieve the violator from other penalties provided by the Act, shows that the legislature was dealing with all licensees and not with retail beer dealers alone.

In Laughter v. Seela, 59 Tex. 177, a case in which it was urged that two acts of the legislature, passed at the same session and taking effect on the same day, were in conflict by reason of general language contained in one, the court said: "The general rule of statutory construction is that, if there is nothing in the statute to limit its general words, they must have general effect. Courts cannot arbitrarily add or subtract from them. * * *"

It is possible that the legislature had in mind only retail beer dealers when it considered the provision denying appeals from orders of suspension since they were the only licensees for which such a punishment was authorized, the provision concerning manufacturers apparently being a device to enforce obedience rather than to punish disobedience. However, the words used plainly applied to all licensees, and the legislature did not see fit to limit this wording when the Liquor Control Act was amended in 1943 so as to permit suspension for acts previously punishable only by fine and cancellation of license.

There is something in the Act to limit the general words of Section 14, Art. 666, V.P. C., but there is nothing limiting the general words used in Section 22, Art. 667, V.P.C.

■ By construing the denial of appeals provision as controlling orders suspending *licenses* to sell beer as distinguished from *permits* to sell wines or liquors, effect can be given to all of the provisions of the Act and to the probable intention of the legislature.

Our conclusions in this regard are strengthened by a consideration of paragraph 16 of Section 15, Art. I, of the original Texas Liquor Control Act of 1935 as amended by the Act of 1937, General Laws of Texas Acts of the 45th Leg., Reg. Session, p. 1072, reading:

"All such permits shall be applied for and issued, unless denied, and fees paid, upon the same procedure and in the same manner and upon the same facts and under the same circumstances, and for the same duration of time, and shall be renewable in the same manner, as required and provided to govern application for and issuance of Retail Beer Dealer's Licenses under Article II of this Act, and shall be subject to cancellation or suspension for any of the reasons that a Retail Beer Dealer's License may be cancelled or suspended, and upon the same procedure. All alcoholic beverages which the holders of such permits are authorized to sell may be sold with the same restrictions as provided in Article II governing the sale of beer, as to prohibited hours, local restrictions, age of employees, installation or maintenance of barriers or blinds in openings or doors, prohibition of the use of the word 'saloon' in the signs or advertising and subject to the same restrictions upon consumption of wine as provided for beer in the case of Retail Beer Dealers in Section 16 of Article II of this Act. *For the violation of any applicable provisions of Article II the holders of such permits shall be liable for penalties provided in Article II; for the violation of any other provision of this Act the holders of such permits shall be subject to penalties provided in Article I of this Act.*" (emphasis added)

Consideration has also been given to the definitions of "licensee" as found in Sec. 1 (e) of Art. II, Texas Liquor Control Act, General Laws of Texas, Acts of the 45th Legislature, Reg. Session, p. 1095, and "permittee" as found in Sec. 3(a) (12),

Art. I, Texas Liquor Control Act, Acts of 51st Leg., Reg. Session, General and Special Laws of Texas, Ch. 543, p. 1013. This Act also amended Sec. 12, Art. I, of the Texas Liquor Control Act so as to provide that the Board or Administrator could cancel or suspend for a period not to exceed sixty days any "permit" on a finding that the "permittee" was domiciled with a person having a financial interest in any establishment engaged in selling beer at retail, and Sec. 11 of the same article authorizing the denial of a "permit" to any applicant having a financial interest in an establishment authorized to sell beer at retail, with certain exceptions.

By reason of Art. 667–22, V.P.C., no appeal to the courts is permitted from the order of the Administrator suspending the license to sell beer of Falstaff Distributing Company of Houston and the agent's beer license of George Willis. Texas Liquor Control Board v. Scrivano, Tex.Civ.App., 256 S.W.2d 598.

Appellant Falstaff says that a suspension of its license for any substantial period of time will result in a cancellation of its distributor's contract with the manufacturer and that this fact was made known to the Administrator at the time of the hearing. It contends that under such conditions the suspension order was, in effect, an order for the cancellation of its license and, therefore, is appealable. The trial court held that the order of suspension was tantamount to a cancellation.

The Texas Liquor Control Act authorizes the Board or the Administrator to cancel or suspend the licenses or permits of those who deal in the manufacture, distribution or sale at retail of beer and intoxicating beverages as a punishment for the violation of the law. Dealers in these commodities enter into the business knowing that their authorization to continue their business may be suspended for such a violation. The fact that, with such knowledge, they might elect to enter into a private contract with their supplier which authorizes cancellations in the event their authority to trans-

act business should be suspended, cannot be permitted to control the discretion of the Board or the Administrator in assessing punishments authorized by the Act. The result of such a ruling would be to permit all manufacturers of beer to nullify the provisions of the Act prohibiting appeals from suspension orders in the case of their distributors and agents by placing such a provision in their contracts.

█ The Texas Liquor Control Act provides that authority to engage in any phase of the business of selling intoxicating beverages is a privilege granted by the state subject to suspension or revocation. The State of Texas is authorized under its police powers to regulate the industry. Under such conditions a right to appeal from the decisions of the administrative agency charged with the duty of regulation is not required by the Constitution of Texas or of the United States. Texas Liquor Control Board v. Scrivano, supra.

In view of our disposition of this case, we find it unnecessary to consider the third Point of Error raised by appellant.

The judgment of the trial court is reversed and the case is ordered dismissed.