

# The Attorney General of Texas

December 30, 1983

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4524 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Reynaldo S. Cantu
Criminal District Attorney
Cameron County
Hall of Justice
974 E. Harrison Street
Brownsville, Texas    78520

Opinion No.  JM-123

Re:  May Cameron County enforce building regulations enacted to restrict development in flood-prone areas by prohibiting provisions of utility service to non-complying structures

Dear Mr. Cantu:

You have requested an Attorney General Opinion on a question arising from the following facts:

> Since the passage of Cameron County's building regulations in 1971, the county has been denying building permits to those individuals whose subdivisions and lots do not meet the regulations established by the county under federal and state enabling legislation through the Federal Flood Insurance Program.  Various utilities have been cooperating with the county in also not providing service to those households which have not received building permits from the county.

> Recently, however, questions have arisen as to whether or not the utilities can deny service to a household just because the county has not given it a building permit.  Our discussions with the utilities have not resolved this issue, and we have agreed to seek an Attorney General's Opinion as to whether or not Cameron County can prevent a utility from providing service to an individual who has been denied a building permit for failure to comply with the county's building regulations.

We will first consider whether the utilities may voluntarily deny service under the facts given.

Article 1446c, section 58(a), V.T.C.S., the Public Utility Regulatory Act, provides that

> [t]he holder of any certificate of public convenience and necessity <u>shall</u> serve every consumer within its certified area and shall render continuous and adequate service within the area. (Emphasis added).

Certificates of convenience and necessity are issued to public utilities pursuant to sections 49-62 of the Public Utility Regulatory Act. The public utilities in question provide, for example, electricity, water, sewage disposal and natural gas. V.T.C.S. art. 1446c, §3(c). Unless the commission issues a certificate that the convenience and necessity will not be adversely affected, the holder of a certificate shall not discontinue service except for:

  (1)   non-payment of charges;

  (2)   nonuse; or

  (3)   other similar reasons in the usual course of business

V.T.C.S. art. 1446c, §58(b). Any discontinuance of service must be subject to conditions prescribed by the commission. <u>Id.</u>

  The commission has promulgated a rule permitting any utility to decline to serve an applicant until he has complied with the state and municipal regulations. Rule 052.02.04.043(a) codified at 16 T.A.C. §23.33. However, municipality is defined as a "city, incorporated village or town . . ." and does not include a county. Rule 052.01.00.012 codified at 16 T.A.C. §21.2.[1] The commission's rule 052.02.04.043(a) also permits the utility to decline service to an applicant who has not complied with the utility's approved rules and regulations filed with the commission or an applicant whose equipment is hazardous or of such character that satisfactory service cannot be given.[2] Thus, the utility may voluntarily deny service to an applicant for the reasons set out in the commission rule. If the Cameron County regulations guard against the same conditions expressed in the utility's approved regulations on file with the commission or if they prohibit utility hook-ups to applicants with equipment hazardous or unsatisfactory because of the danger of being located in a flood prone area, the utility may voluntarily comply with them.

---

1.   Cameron County might approach the PUC about amending its rule to include the county.

---

2.   The utility could seek an amendment to its regulations to deny service to buildings which lack permits required by local law.

If the utility cannot voluntarily refuse service to an individual who has been denied a building permit for failure to comply with county building regulations promulgated pursuant to article 1581e-1, V.T.C.S., and sections 16.311 through 16.319 of the Texas Water Code, you wish to know whether Cameron County may prevent the utilities from providing such service.

The Public Utility Commission has general power to regulate public utilities and to make rules reasonably required in the exercise of this power. V.T.C.S. art. 1446c, §16. Section 17(e) of the act vests in the commission exclusive jurisdiction over "electric, water, and sewer utility rates, operations and services not within the incorporated limits of a municipality exercising exclusive original jurisdiction . . . ." Section 18 of the act vests similar jurisdiction in the commission over telecommunications utilities in all areas of the state. This latter jurisdictional grant has been construed broadly to include "the entire field of legislative regulation of public utilities." Southwestern Bell Telephone Company v. City of Kountze, 543 S.W.2d 871 (Tex. Civ. App. - Beaumont 1976, no writ). See also V.T.C.S. art. 1446c, §35.

Counties have only those powers and duties expressly granted or necessarily implied from statutory and constitutional provisions. Canales v. Laughlin, 214 S.W.2d 451 (Tex. 1948); Anderson v. Wood, 152 S.W.2d 1084 (Tex. 1941); Attorney General Opinion H-374 (1974). The commissioners court does not have general police powers. Commissioners' Court v. Kaiser, 23 S.W.2d 840 (Tex. Civ. App. - Galveston 1929, writ ref'd).

Article 1581e-1, section 4, V.T.C.S., authorizes counties bordering on the Gulf of Mexico or the tidewater limits thereof

> to enact and enforce regulations which regulate, restrict, or control the management and use of land, structures, and other development in flood, or rising water prone, areas in such a manner as to reduce the danger of damage caused by flood losses. This power and authority may include, but shall not be limited to, requirements for flood-proofing of structures which are permitted to remain in, or be constructed in, flood or rising water prone, areas; regulations concerning minimum elevation of any structure permitted to be erected in, or improved in, such areas; specifications for drainage; and any other action which is feasible to minimize flooding and rising water damage.

Article 1581e-1, V.T.C.S., was enacted in 1969 to enable coastal counties to qualify for participation in the National Flood Insurance Program.  Acts 1969, 61st Leg., ch. 720, §1 at 2107; Attorney General Opinion H-1024 (1977).

Sections 16.311 through 16.319 of the Water Code authorize a number of political subdivisions including any county "to take all necessary and reasonable actions to comply with the requirements and criteria of the National Flood Insurance Program."  Specific powers include, but are not limited to, the following:

> (1) making appropriate land use adjustments to constrict the development of land which is exposed to flood damage and minimize damage caused by flood losses;
>
> (2) guiding the development of proposed future construction, where practicable, away from location which is threatened by flood hazards;
>
> (3) assisting in minimizing damage caused by floods;
>
> . . . .
>
> (5) engaging in floodplain management and adopting enforcing permanent land use and control measures consistent with the criteria established under the National Flood Insurance Act;
>
> (6) declaring property, when such is the case, to be in violation of local laws, regulations, or ordinances which are intended to discourage or otherwise restrict land development or occupancy in flood-prone areas and notifying the secretary, or whomever he designates, of such property;
>
> . . . .
>
> (12) satisfying criteria adopted and promulgated by the department pursuant to the National Flood Insurance Program; and
>
> (13) adopting permanent land use and control measures with enforcement provisions which are consistent with the criteria for land management and use adopted by the secretary . . . .

Water Code §16.315.

Article 1581e-1, V.T.C.S., and sections 16.311 through 16.319 of the Water Code must be construed in conformity with their purpose -- that is, enabling counties and various other political subdivisions to qualify for participation in the National Flood Insurance Program. See Texas Liquor Control Board v. Falstaff Distributing Company, 369 S.W.2d 483 (Tex. Civ. App. - Houston 1963, no writ). See also Code Construction Act, V.T.C.S., art. 5429b-2, §3.03(1) (in construing a statute, a court may consider the object sought to be attained). The language and the purpose of these statutes do not require us to conclude that counties have been given land regulation powers broader than those necessary and reasonable to qualify for the National Flood Insurance Program. Attorney General H-978 (1977), in considering whether counties could enforce requirements in excess of the minimum necessary to qualify for insurance under the federal program, stated as follows:

> the authorization of . . . [the predecessor of section 16.315] clearly is not an unconditional grant of authority for political subdivisions to enact land use regulations not otherwise sanctioned by law. The regulations so enacted must have as their purpose and effect compliance with the requirements and criteria promulgated pursuant to the National Flood Insurance Program.

The Public Utility Regulatory Act was enacted in 1975, subsequent to article 1581e-1, V.T.C.S. See Acts 1975, 64th Leg., ch. 721 at 2327. Thus, even if article 1581e-1, V.T.C.S., could be construed to impliedly authorize counties to deny utility hook-ups to consumers as a means of enforcing land use regulations, that power would have been repealed by the enactment of the Public Utility Regulatory Act. See V.T.C.S. art. 1446c, §§16, 17(e), 18, 35, 58; see also id. §90 (express repeal of conflicting laws).

The denial of utility connections to non-complying construction in a flood plain might be a means of "minimizing damage caused by floods." Water Code §16.315(3). However, we do not believe this general authorization evinces a legislative intent to repeal provisions of the Public Utility Regulatory Act requiring regulated utilities to serve customers within the certified area or providing that the Public Utility Commission has exclusive original jurisdiction in unincorporated areas over telecommunications, water, sewer and electric utilities. The commission, in the exercise of its rule-making power, may define the limitations on a utility's duty to serve every customer in its area. Neither article 1581e-1 nor section 16.315 of the Water Code authorize a county to do so. We conclude that a county may not require a utility to deny service to an individual or entity not in compliance with county flood control ordinances or regulations.

## S U M M A R Y

The Public Utility Regulatory Act, article 1446c, V.T.C.S., and present regulations promulgated thereunder, prevent Cameron County from requiring utilities to deny service to individuals or entities not in compliance with county flood regulations.

Very truly yours,

JIM   MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Susan L. Garrison
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Susan Garrison
Jim Moellinger
Fernando Rodriquez
Nancy Sutton