GEO. W. GLASGOW v. J. J. TERRELL, COMMISSIONER, ET AL.

No. 1680. Decided May 22, 1907.

**1.—Constitutional Law—Exclusive Privileges.**

The prohibition of "exclusive separate public emoluments or privilege" contained in the Bill of Rights (Const., art. 1, sec. 3), restrains the State only in its political functions, which affect the public, not in the acquisition of private property and the disposition of property already acquired. (Pp. 583, 584.)

**2.—Same—School Land—Sale to Lessee—Exclusive Privilege.**

Section 5 of the Act of April 15, 1905 (Laws 1905, p. 159), giving to lessees of school land an exclusive right to purchase during the continuance of the lease, is not in contravention of article 1, section 3, of the Constitution, since the right granted, though an exclusive privilege, is not a public one. (Pp. 584, 585.)

**3.—Same—Subsequent Assignees.**

The right given to assignees of school land to purchase same under

section 5 of the Act of April 15, 1905 (Laws, 1905, p. 159), is not limited to assignees who were such before the Act became a law. The Act itself expressly specifies which of its provisions are to apply only to existing conditions. (P. 585.)

Original application to the Supreme Court by Glasgow for mandamus to require Terrell, as Commissioner of the General Land Office, to accept his application to purchase school land, Kokernot, as an adverse claimant, being made corespondent.

*L. N. Halbert* and *James & Yeiser*, for relator.—Section 5 of the Act of April 15, 1905, is within the prohibition of article 1, section 3, of the Constitution of Texas. San Antonio & A. P. Ry. Co. v. Wilson, 19 S. W. Rep., 912; Pullman P. C. Co. v. State, 64 Texas, 274; Ex parte Jones, 38 Texas Crim. App., 482; State v. Wagner, 38 Law. Rep. Ann., 677; State v. Barbroski, 111 Iowa, 496, 56 Law. Rep. Ann., 570; In re Grice, 79 Fed. Rep., 647; Hazlewood v. Rogan, 93 Texas, 304; Martin v. Terrell, 97 Texas, 123; Van Harlinger v. Doyle, 134 Calif., 53; Daily Leader v. Cameron, 3 Okla., 686; Gordon v. Winchester B. L. & A., 75 Ky., 110; Citizens S. & L. Co. of B. v. Uhler, 48 Md., 459; Kentucky Trust Co. v. Lewis, 82 Ky., 579; Crowley v. West, 47 Law. Rep. Ann., 655-6; State v. Elizabeth, 23 Law. Rep. Ann., 530; State v. Mahner, 43 La. Ann., 496; State v. Post, 26 Atl. Rep., 683; In re Day, 181 Ill., 73; Sayre v. Phillips (Sp. Ct. Penn.), 24 Atl. Rep., 76; Ex parte Deeds (Sp. Ct. Ark.), 87 S. W. Rep., 1030; Ruhstrat v. People, 185 Ill., 133; People ex rel McPike v. Van De Carr, 86 N. Y. Supp., 644; Motley v. Southern F. & W. Co., 30 S. E. Rep., 3; Durkee v. City of Janesville, 28 Wis., 464; Hincks v. City of Milwaukee, 46 Wis., 566; Fiske v. Raymond, 52 Law. Rep. Ann., 291; Street v. Varney, 61 Law. Rep. Ann., 161.

A person who has become the assignee of a lease since the passage of the Act in question is not within the meaning of the Act an assignee and is not entitled to purchase out of the lease before its expiration.

*R. V. Davidson*, Attorney General, and *Wm. E. Hawkins*, Assistant, for respondent Terrell.

*R. L. Ball, I. H. Burney, C. C. Clamp, Rogan & Simmons* and *Denman, Franklin & McGown*, for respondent Kokernot.—The preference right of purchase conferred by section 5 of the Act of April 15, 1905 (Chap. 103, Gen. Laws, 1905, p. 163), upon "the assignee of an entire lease," is not limited to assignees under assignments made prior to the Act. Brown v. Maryland, 12 Wheat., 419, 438; Bend v. Hoyt, 13 Pet., 263, 271, 272; Garza v. Terrell, 99 Texas, 506; Murphy v. Terrell, 100 Texas, 397; Tollison v. Rogan, 96 Texas, 424.

The courts have uniformly upheld laws in favor of or against particular classes, provided the law equally favors or equally opposes every one of the particular class, and provided that the class is not named and singled out arbitrarily without any reason therefor. Gulf, C. & S. F. Ry. Co. v. Ellis, 21 S. W. Rep., 933; Gulf, C. & S. F. Ry. Co. v. Ellis, 87 Texas, 19; Rippey v. State, 68 S. W., 687; Missouri, K. & T. Ry.

Co. v. May, 194 U. S., 267; Campbell v. Cook, 24 S. W. Rep., 977; Union Cent. L. Ins. Co. v. Chowning, 86 Texas, 654; Superior Lodge U. B. A. v. Johnson, 98 Texas, 1; McGrew v. Williamson, 57 S. W. Rep., 63.

A law or statute will not be declared unconstitutional by the courts unless it is clearly so, and in case of doubt it will be held valid. Orr v. Rhine, 45 Texas, 354; Barker v. Torrey, 69 Texas, 12; Railroad Com. v. Houston & T. C. Ry. Co., 90 Texas, 340-349; Clark v. Finley, 93 Texas, 171; Williams v. Cammack, 27 Miss., 209, 61 Am. Dec., 513; McCready v. Virginia, 94 U. S., 391.

GAINES, CHIEF JUSTICE.—This suit is an original proceeding instituted by Glasgow as relator to compel respondent, Terrell, as Commissioner of the General Land Office, to award him a section of school land which he had made application to purchase. H. L. Kokernot was made a corespondent on the ground that he was asserting a claim to the land adverse to that of the relator. Each respondent filed an answer and the relator thereafter filed a supplemental petition in reply thereto.

The undisputed facts as shown by the pleadings and as given in chronological order, are, that on the 27th day of February, 1903, the Commissioner executed to one J. W. Kokernot a lease of the section of school land in controversy—the term to begin on the 2d day of January, 1902, and to continue for the period of three years; that on the 23d day of September, 1905, J. W. Kokernot assigned the entire lease to the respondent, H. L. Kokernot; that on the same day as such assignee the latter made application to purchase the section; and that on the 18th day of November, next thereafter, the land was awarded to him by the Commissioner. On the 28th day of February, 1906, the relator filed his application to purchase the same section and complied in all respects with the prerequisites of the statute, necessary to become a purchaser of school lands. His application was rejected by the Commissioner for the sole reason that the section had already been sold to the respondent, Kokernot.

The relator assails the action of the Commissioner in rejecting his application on the ground that the sale to Kokernot was not authorized by law. He asserts that the award to Kokernot was illegal for two reasons: (1) Because section 5 of the Act for the sale and lease of the free school and asylum lands which was approved April 15, 1905, and which took effect on the same day (Laws 1905, p. 159), under the terms of which the award was made, is in conflict with the Constitution insofar as it undertakes to give a preference right to purchase to the assignees of leases theretofore made, and (2) that even if the provision be valid it applied only to assignees who were such before the Act became a law.

The provision of our Constitution which is relied upon by relator as prohibiting the legislation in question is contained in the first article, denominated the "Bill of Rights," and is as follows: "All free men when they form a social compact have equal rights, and no man or set of men is entitled to exclusive separate public emoluments or privileges, but in consideration of public services." The part of section 5 of the Act above cited which is claimed to be in conflict with the provision of

the Constitution just quoted reads as follows: "An original lessee or the assignee of an entire lease out of which no sale of one complement of land has been made under this Act may purchase out of his lease at any time the quantity of land allowed to one purchaser under the provisions of this Act." This undertakes to give the lessee or the assignee of an entire lease (which is absolute) the right to purchase during the existence of the lease, a right which no one else may exercise. That it can not be deemed an emolument in any proper sense of that word we think clear. That it is a privilege we think also clear. But is it a public privilege? We think not. It is a private right granted a lessee of the school lands of the State, or to his assignee, by reason of the relation created by the contract between such lessee and the State. It is a matter of a private contract, unless it should be held that all contracts made by and on behalf of the State are public. Every State has of necessity dual functions to perform; first, its political functions, which affect the public; second, its private functions, such as the acquisition of private property and the disposition of property already acquired. The latter are not in our opinion affected by the provision of the Constitution in question. It was so held in the case of Williams v. Cammack (27 Miss., 209), in which a provision of the Constitution of Mississippi couched in substantially the same language was in question. In speaking of that provision the court say: "But the section in question is not liable to the objection urged against it. The clause of the Constitution referred to declares, as a part of the organic law of this State, "that all freemen are equal in rights" and, "that no man or set of men are entitled to exclusive, separate public emoluments or privileges from the community, but in consideration of public services." The principle here announced is that of equality in political rights, and a denial of all title to individual privileges, honors and distinctions from the community, but for public services. It was directed against superiority of personal and political rights, distinctions of rank, birth or station, and all claims of emoluments from the community, by any man or set of men, over any other citizens of the State. It declares that honors, emoluments and privileges of a personal and political character are alike, free and open to all the citizens of the State. But it has no reference to the private relations of the citizens, nor to the action of the Legislature in passing laws regulating the domestic policy and business affairs of the people, or any portion of them. Such matters are left, with but few limitations, to the discretion of the Legislature." We have found no other case in which the words "public emoluments and privileges" have been construed.

Our Constitution itself is not without directions as to the disposition of the school lands. Section 4 of article 7 prescribes that: "The lands herein set apart to the public free school fund shall be sold under such regulations, at such times, and on such terms as may be prescribed by law; and the Legislature shall not have power to grant any relief to purchasers thereof." This clearly makes it the duty of the Legislature to provide by law for the sale of the school lands. It was doubtless contemplated that the provisions so made should be such as in the opinion of the lawmaking department would yield the largest sum of money to the fund for which the lands were set apart. In accordance with this

view, we have held that the Legislature had the power to withhold from sale such of the lands as were not fairly marketable and as incidental thereto, to lease them until they should come upon the market. Consequently we have held that the Legislature could authorize a lease of the lands whenever in their opinion they were not salable at their reasonable value. For many years they have as a rule authorized sales to actual settlers only; and this has become the settled policy of the State. That this was a legitimate exercise of the legislative power we see no good reason to doubt. When and to whom the lands shall be sold, is a question of sound policy and belongs to the political department. So that as we think the Legislature in giving a preference right to lessees and their assignees to purchase the lands held by them under lease, has not transcended its powers under the Constitution.

Nor do we think that the preference right of purchase, given by section 5 of the Act in question, is confined to assignees who were such when the Act took effect. Following the provision previously quoted, the section contains this express limitation: "The foregoing provisions shall apply only to leases heretofore made;" and it seems to us that if it had been the purpose to limit the provision to assignees who had acquired leases before the passage of the law, that intention would have been clearly expressed in the same sentence, or in close connection therewith. In the same section a preference right to buy is given to certain assignees of parts of leases, but it is carefully limited to those whose leases were evidenced "by a written assignment executed prior to March 17, 1902." Also the same right is given to an actual settler, who holds under an assignment of a part of a lease executed prior to January 1, 1905. These provisions evidence to our minds that the Legislature was careful to express in the section 5 the only limitations which it intended should apply to the preference right of purchase given by it.

We are of opinion the writ of mandamus should be refused; and it is accordingly so ordered.

*Mandamus refused.*