WILLIAMS et al. v. WOODS et al.

(Court of Civil Appeals of Texas. San Antonio. Jan. 15, 1914.)

ELECTIONS (§ 48*)—ELECTION DISTRICT—POWER OF COUNTY COMMISSIONERS.

While the court of county commissioners has considerable discretion as to the mode of dividing a new county into election districts, an arbitrary division so as to give one set of officials control of the county politics by gerrymandering the district will not be upheld, particularly where the division lines practically deprived some voters of their right of franchise.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 42; Dec. Dig. § 48.*]

Appeal from District Court, Duval County; W. B. Hopkins, Judge.

Suit by Charles H. Williams and others against S. H. Woods and others. From a judgment denying a temporary restraining order, plaintiffs appeal. Reversed and remanded, with directions.

Terrell, Walthall & Terrell, of San Antonio, Dougherty & Dougherty, of Beeville, and Perkins, Leslie & McCampbell, of Alice, for appellant Williams. Hicks, Hicks & Teagarden, of San Antonio, for appellees Woods and others.

FLY, C. J. The appellants, Charles H. Williams, Rafael H. Palacios, John B. Peal, and Casamiro Salinas, applied to the district court of Duval county for a temporary order restraining S. H. Woods, county judge, and J.

W. Shaw, A. Parr, E. Carrillo, and J. M. Corkhill, county commissioners, of Duval county, and O. G. Allen, N. E. Martinez, J. C. Wall, H. B. Roach, S. C. Navarro, and Juan Saens, presiding officers of an election ordered by said judge and commissioners to be held on January 15, 1914, for the election of officers and location of the county site of Dunn county, which was established by an act of the Thirty-Third Legislature, from holding said election. The restraining order was sought to prevent an election before the merits of the cause could be inquired into on a final trial. Evidence was heard by the trial judge, and the restraining order denied. An appeal has been perfected to this court from the order refusing the temporary injunction, and upon application of appellants this court has granted a writ of injunction to prevent an election while this cause is pending before this court.

It appears from the petition that by the act of the Legislature creating Dunn county, the commissioners' court of Duval county was authorized and directed to lay off and divide Dunn county into four convenient commissioner's precincts, and not less than four convenient justice's precincts, and to designate convenient places throughout the county for voting boxes; that the commissioners' court, on December 22, 1913, had divided Dunn county into four commissioner's precincts, into six justice's precincts, and six election precincts; that the division so ordered was "arbitrary, unfair, unjust, and unlawful," because of the great disparity in the area, property, and population of the commissioner's precincts, precinct No. 1 having approximately 150,000 acres and including in its boundaries about one-half of the town of Benavides, precinct No. 2 having about 38,000 acres, precinct No. 3 about 40,000 acres, and precinct No. 4 about 354,000 acres, including in its boundaries a part of the town of Benavides and the town of Realitos; that precinct No. 1 has about 2,600 inhabitants and 300 qualified voters, precinct No. 2 has about 325 inhabitants and about 50 qualified voters, and that precinct No. 4 has about 1,600 inhabitants and 200 qualified voters; that the precincts are so divided that 120 voters will elect two members of the commissioners while the 500 voters in the other two precincts would only elect two commissioners; that there are about 80 miles of public roads in precinct 1, 7 in precinct 2, 25 in precinct 3, and 30 in precinct 4; that commissioner's precinct 1 is about 25 miles long and 10 miles wide, precinct 2 9¾ miles long and 6 miles wide; and that precinct 3 is 7½ miles wide by 15 miles long. It was alleged that the election precincts were laid off without regard to the convenience of the voters, and that the boundaries of the voting precincts were so vaguely defined that many voters are unable to ascertain in what precincts they reside. The disparity in population and acreage was practically admitted in the answer of appellees, and the following allegation was made: "And in this connection defendants would allege that the county of Dunn is inhabited by native Americans of the Angle-Saxon blood and Mexicans of the Latin blood, and that the Americans live in closely settled communities of said county, and the Mexicans who have become citizens of this country live in other portions of the county in communities of close proximity to each other, and that it was the intention and desire of the commissioners' court of Duval county to give to the Americans as nearly equal representation in the government of the county as was given to the Mexicans, and in order to bring about such result the said defendants were compelled to make the divisions of the commissioner's precincts as hereinbefore stated, and, unless such divisions were so made, either the Americans or the Mexicans would absolutely dominate in the governmental affairs of the county; and it was and is for this reason only that there appears a disproportion of the voters in the various commissioner's precincts as hereinbefore set out, and that is the reason why said precincts have been so framed and the reason that a portion of the town of Benavides will be in one of the commissioner's precincts, to wit, No. 1, and the other portion of said town will be in another commissioner's precinct, to wit, No. 4, the town of Benavides having approximately 1,020 inhabitants."

In the act creating Dunn county (page 86, Gen. Laws [1st Called Session, 33d Leg.]), it is provided that its territory should be taken from the territory of Duval county; that at as early a date as practicable it should "be the duty of the commissioners' court of Duval county to employ a competent surveyor to run the lines of said county, make field notes thereof, and establish its corners and boundaries and lay off and divide said new county into four convenient precincts for the election of county commissioners and not less than four convenient precincts for the election of justices of the peace and constables, particularly defining the boundaries of such precincts, and also to designate convenient places in said new county where elections shall be held, and appoint a presiding officer for such place designated in such new county for holding elections." It will be noted that in laying off the different precincts the convenience of the voters was to be the object and aim of the commissioners' court, but that object seems to have been lost sight of, and the commissioner's and justice's precincts were laid off in utter disregard of the rights of voters. The great disparity in acreage and population is sought to be justified only on the ground that the county should be so divided as to give the Anglo-Saxons a part of the precincts and the Mexican population the others. Convenience of the voter did not enter the consideration of the court, but di-

visions of the territory were made that will tend to foment strife among citizens of different races. The Legislature never contemplated a division upon any such lines. It is the object and aim of our form of government to assimilate the foreigner and transform him as quickly as possible into an American citizen, and divisions of territory of a county upon the basis of having one precinct American, another Mexican, and another Chinese or Japanese would merely tend to accentuate race differences and create strife and dissension. But, outside of all that, the convenience of the voters should not be disregarded in order to divide a county on racial or any other lines.

One of the chief ends desired in laying out and designating precincts in a county is to secure to all legal voters equal and ample opportunity to vote, and, if the precincts are so laid out that voters are left in grave doubt as to where they are to vote, that end is not regarded or kept in view. The division of the county, as indicated in this record, is the second one made by the commissioners' court of Duval county, the former division having been set aside by order of this court on December 20, 1913, and yet on December 22d, with surprising haste, another division of the county was made, in the town of San Diego, without being near Dunn county, and lines, courses, and distances prescribed without reference to natural or artificial objects, and without calls for lines of surveys. Voters, whether the numbers be great or small, residing in proximity to any of the unmarked, imaginary lines would be utterly ignorant of the location of their voting boxes. There are lines running "about" 6½ miles and "about" 6¼ miles from a given point to an unmarked, unlocated point, and one of the commissioners swore that voters could locate themselves by whether they were above or below a pecan tree not called for in the field notes, and of whose location, with reference to the precinct line, no voter could know. This witness admitted that the boundaries of precincts 2, 4, and 5 were laid out without reference to natural or artificial objects, and stated that, if a man "did not know exactly where he voted, he should go and ask the presiding officers in which precinct he voted." The right of an American citizen to vote should never be left at the arbitrary disposal of a presiding officer appointed by three men, two of whom are candidates for office in the new county, and one of whom is actively pushing the claims of Benavides to be the county seat.

That the convenience of voters cut no figure in the districting of the county is apparent from the admissions of at least one of the commissioners. He admitted that the offices of both were parceled out and allotted to certain men, and it is apparent that everything was done with that allotment in view. They named the candidates, and it was admitted that Realitos was not made a voting place in the precinct in which it was placed in order that the voters of that town might be deprived of the right to vote at their homes and forced to travel to Benavides in order to vote.

The northwest portion of the county is deprived of a voting box, as stated in one part of the testimony, because there were so few votes in that section, but in another part it crops out that no voting box was placed there so that they could appoint a presiding officer from that section to conduct the election at Realitos. The commissioner testified: "At the last redistricting we located a polling place at Chapa and did not locate one at Realitos. We did not locate it at Realitos because we located this one up here (indicating on map), and made all these people go across here and vote there, and Realitos was here. Concepcion was down here, and we just figured that we would make all these voters go to Benavides to vote. When we first started out to organize this county, Mr. Ed. C. Lasater jumped into this fight against us and sent Mr. Temple Henry throughout Dunn county making speeches. Mr. Henry was running over the county in an automobile, and Judge Brooks, of Brooks county, was making speeches and telling these people that if they didn't vote for them they would not credit them any more, and that they would make them pay up their accounts; and then we just said to ourselves: If Mr. Lasater is in this fight and has got all these people down below digging stumps for him, and he proposes to vote these people at Realitos, we will not make their polling place at Realitos, and make these go to Benavides, and see that we get a fair deal, and see that nobody should vote a Brooks county tax receipt. That's why we did it." This was a frank confession that the precinct was established, not for the convenience of the voters, but to punish them for daring to advocate other men than those named by the commissioners' court.

The mode of dividing the county of Dunn into commissioner's precincts is not made with any reference to the convenience or desires of voters, but to make it possible that certain men shall obtain and hold the government of the county, perhaps for years. This court will not lend its aid in furthering the desires of any set of men to the detriment of the people, but will endeavor with all the power placed in its hands to protect the voters of the county in the free and unrestricted right of suffrage.

A portion of Benavides, in which one of the commissioners lives and owns property, is placed in one commissioner's precinct and the other portion in another, and the circumstances indicate that the object in so dividing the largest town in the county is to use its votes in controlling two precincts, which could not be accomplished if it were placed in one precinct. The votes of Benavides that are placed in the precinct with Realitos will

overcome the vote of the latter. In the former appeal involving the validity of the first districting of the county, the fact that both Realitos and Benavides were placed in the same precinct was condemned by this court. In order to meet that objection, Benavides was divided. That action did not relieve the establishing of the precincts of its unfairness. The object of both orders of the commissioners' court was the same and cannot meet with the approval of a fair and unprejudiced court.

The law confides a sound discretion to the commissioners' court of Duval county in dividing Dunn county into convenient precincts, and this court is not disposed to interfere with that discretion, unless, as in this case, and the former, it is exercised in an arbitrary, unfair, and unreasonable manner, with the undisguised purpose of furthering the aims and desires of certain men bent upon acquiring control of the new county. The commissioners' court has the authority to divide the county into precincts, but it must be done with some degree, at least, of respect for the rights of the voters of the county.

The judgment is reversed, and the cause remanded, and the temporary writ of injunction herein granted is continued in full force and effect until the mandate of this court is issued, restraining appellees from holding an election with the county divided as it is.