**MIDLAND COUNTY, Texas, et al. Appellants,**

v.

**Hank AVERY, Appellee.**

No. 5745.

Court of Civil Appeals of Texas.

El Paso.

Dec. 8, 1965.

Rehearing Denied Jan. 5, 1966.

Harrell Moore, County Atty., Frank Stubbeman, W. B. Browder, Jr., F. H. Pannill, Stubbeman, McRae, Sealy & Laughlin, Midland, for appellants.

Wm. A. Olson, Austin, for appellee.

CLAYTON, Justice.

This is a county commissioners' precinct redistricting case, appealed from the judgment of the District Court of Midland County, Texas. Avery, appellee here, brought the suit as a resident property owner, tax payer and qualified voter of the City of Midland, County Commissioners' Precinct No. 1, Midland County, Texas, "individually and on behalf of other persons similarly situated and qualified" against the County of Midland and its county judge and four county commissioners, appellants here. Plaintiff-appellee's pleadings reflect that, since the time of its incorporation in 1901, the City of Midland, lying virtually in its entirety in Commissioners' Precinct No. 1, has been the only incorporated city, town or village in Midland County. The city's population had grown through the years until at the time of the 1960 Federal Decennial Census its population represented 92.48 per cent of the population of the county, and Precinct No. 1 contained 97.80 per cent of the population of the county. Of the qualified voters of the county in that year, 97.88 per cent resided in Precinct No. 1. Plaintiff asserted that other things, such as market value and assessed value of taxable property, miles of county roads, land area, allocation and use of county funds and revenue, etc., were disproportionately distributed among the commissioners' precincts of the county, making the precincts as established "grossly impractical and inconvenient to the people". In September, 1962, plaintiff petitioned the Commissioners' Court for a redistricting of the county's precincts, but "such petition and request was refused". In that same month this suit was filed to compel a redistricting, invoking the jurisdiction of the district court under its supervisory control of county commissioners' courts as provided in Article V, § 8 of the Texas Constitution, Vernon's Ann.St. During the pendency of this suit, and in July and August, 1963, public hearings were held by the Commissioners' Court on the matter of redistricting the county, during which time plaintiff and others testified or presented plans for such redistricting. On August 31, 1963, plaintiff's pleadings relate, the Commissioners' Court adopted an order, effective January 1, 1964, redistricting Midland County into commissioners' precincts, which order, plaintiff alleges, made only insignificant changes in the boundaries of commissioners' precincts and in no way corrected or lessened the great disparity in population, qualified voters, land area, assessed value of taxable property, miles of county roads and other pertinent things among the commissioners' precincts of said county; that in passing said order the commissioners had acted arbitrarily and capriciously, in abuse of their discretion and without regard to the convenience of the people of Midland County or the rights, privileges and guarantees of plaintiff and others similarly situated by the Constitution of the State of Texas and of the United States. Plaintiff prayed that such order of the Commissioners' Court of August 31, 1963 and all prior orders dividing Midland County into commissioners' precincts be set aside and that writ of mandamus issue compelling the defendants to pass a new order giving proper consideration to equality of population and the other factors said by plaintiff to be pertinent in the division of the county into commissioners' precincts.

The presiding judge, who heard the cause without the intervention of a jury, found that Precinct No. 1 had in excess of 95 per cent of the total population of the county under the order of August 31, 1963, and that on the date of such order over 97 per cent of the qualified voters of the county resided in said Precinct No. 1, and that there was a gross disparity of other pertinent factors, such as land area and taxable values in said order as in all previous orders dividing said county into commissioners' precincts; that in passing such order of August 31st the defendants had acted arbitrarily, capriciously, unreasonably, unfairly and wrongfully, in gross abuse of their discretion, and that their action constituted invidious discrimination. The court's judgment further found that the said order was not for the convenience of the people of said county as required by Article V, § 18 of the Constitution of the State of Texas. The judgment of the court set aside said order and all previous orders dividing the county into commissioners' precincts, and ordered that the Commissioners' Court, not later than the next succeeding July or August term of said court, "divide said County into four Commissioners' Precincts for the convenience of the people of said County and in so doing to establish such Commissioners' Precincts so that each *will have substantially the same number of people*". (Emphasis supplied).

■ Appellant Commissioners advanced twelve points of error and appellant Midland County presented two points of error attacking the District Court's order as above set out. We deem it unnecessary to discuss these points separately or at length, but will treat only those assignments which relate to that part of the order underscored above which embodies the mandatory requirement that the county be divided into precincts so that each would have substantially the same number of people. We are in accord with the assertion by appellant Commissioners that "neither the Constitution of the United States nor the Constitution of Texas, as construed and interpreted

by the courts, contains any requirement that county commissioners precincts be equal to each other in population * * *" Article IV, § 4 of the United States Constitution merely provides that "The United States shall guarantee to every State in this Union a Republican Form of Government * *." Amendment XIV, section 1 provides: "* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Article V, § 8 of the Texas Constitution provides that the district courts "shall have appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law; * * *"; and § 18 of the same Article relates to commissioners' precincts:

"Each organized county in the State now or hereafter existing, shall be divided from time to time, for the convenience of the people, into precincts, not less than four and not more than eight. * * * Each county shall in like manner be divided into four commissioners precincts in each of which there shall be elected by the qualified voters thereof one County Commissioner * * *. The County Commissioners so chosen, with the County Judge as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed. * * *"

Among the scant authority in Texas on the subject of establishment of commissioners' precincts is to be found the 1932 opinion of this court in Lewis v. Harris, 48 S.W. 2d 730, in which a writ of error was refused. This was a redistricting case which arose in Upton County, and we find the

facts involved and the language employed so nearly applicable to the case before us as to justify quotation therefrom at some length. The court states:

" * * * Appellants cite section 18, art. 5, of the State Constitution which, in substance, requires the division of the county 'from time to time, for the convenience of the people, into precincts,' and that the commissioners' precincts shall be four in number.

"Disregarding legal conclusions stated therein, the petition here simply shows a state of facts which gives to the town of Rankin and precincts Nos. 1, 2, and 3 a power of control over the commissioners' court of the county out of proportion to their population, voting strength, and taxable values, thereby denying to the town of McCamey and precinct No. 4 the representation upon the court and power of control to which such town and precinct is justly entitled by the population, voting strength, and taxable values thereof.

"As applied to different situations, the phrase 'convenience of the people,' as used in the Constitution, may have different meanings, but in our opinion it cannot properly be construed as imposing upon a commissioners' court the absolute duty of rearranging the boundaries of commissioners' precincts, from time to time, so as to accord to each precinct representation upon and power of control of the commissioners' court in proportion to their respective populations, voting strengths, and taxable valuations. This is what the present action seeks to compel. The location of cities and towns in certain counties is no doubt such that it cannot be conveniently done. From a political viewpoint it is desirable and just that the precincts should be so arranged, but in some instances it is doubtless not practical.

"It is not alleged that a redivision of the county as sought is practical and convenient for the people. Plaintiffs simply base their demand upon population, voting strength, and taxable valuation. The present division is inconvenient in the sense only that the town of McCamey and precinct No. 4 have not the representation upon and control of the commissioners' court to which the plaintiffs say such town and precinct are justly entitled by the population, voting strength, and taxable valuation thereof.

"There is no law imposing upon a commissioners' court the duty of rearranging the commissioners' precincts of a county upon such a basis, and the writ of mandamus will not lie to compel such action. The demurrers were properly sustained."

The cited case is given recognition in Hatter v. Worst, 390 S.W.2d 293 (Tex.Civ.App., 1965; n. r. e.), although Lewis v. Harris was not controlling on the issue involved in the latter case. An analytical and well-documented discussion of the case now before us is to be found in the Winter, 1965 issue of the Baylor Law Review, Vol. XVII, No. 1, p. 41, written by J. William Davis, which it would be well for the reader of this opinion to review for additional background information on the case before us.

■ We have come to the conclusion that the judgment of the lower court in the instant case must be reversed. It has been stated here that this judgment orders the Commissioners' Court of Midland County to divide said county into four Commissioners' Precincts "for the convenience of the people of said County" and in so doing to establish such commissioners' precincts "so that each will have substantially the same number of people". The order thus exceeds the admonition contained in the Texas Constitution that requires only that the division of the county in such precincts be "for the convenience of the people", which, as stated in Lewis v. Harris, supra, cannot properly

be construed as imposing upon a commissioners' court the absolute duty of rearranging the boundaries of commissioners' precincts so as to accord to each precinct representation upon and power of control of the commissioners' court in proportion to their respective populations, voting strengths and taxable valuations, however desirable, in certain instances, such a division might be. Just as there is no law or constitutional requirement that such a division be made, neither is there authority, in our opinion, for the lower court herein to compel the establishment of commissioners' precincts so that each will have substantially the same number of people. Following this reasoning, the lower court was without authority to enter the order embodied in its judgment, and such judgment must therefore be reversed.

Since this case has been thoroughly tried and expertly briefed by both parties, we feel that no useful purpose would be served by a remand, and this cause is therefore here rendered for the appellants.

Reversed and rendered.