**Hank AVERY, Petitioner,**

v.

**MIDLAND COUNTY, Texas, et al., Respondents.**

**No. A–11272.**

Supreme Court of Texas.

July 13, 1966.

Rehearing Denied Oct. 12, 1966.

---

William A. Olson, Houston, for petitioner.

Stubbeman, McRae, Sealy & Laughlin, F. H. Pannill and W. B. Browder with above firm, R. Harrell Moore, Midland, for respondents.

STEAKLEY, Justice.

Article V, Section 18, of the Texas Constitution, Vernon's Ann.St., requires a division of the counties of Texas "from time to time, for the convenience of the people * * * into four commissioners precincts in each of which there shall be elected by the qualified voters thereof one County Commissioner * * *" This case presents for decision the question of the constitutional validity of such division in Midland County, Texas. The county was last redistricted by order of its commissioners court dated August 31, 1963, effective January 1, 1964. This suit by Petitioner, a resident property owner, taxpayer and qualified voter of Precinct No. 1, Midland County, attacks the division and seeks a redistricting. The judgment of the trial court set aside the current and previous orders dividing Midland County into commissioners precincts and ordered a redistricting of the county on the basis of equality of population in the precincts. The Court of Civil Appeals reversed the judgment of the trial court and rendered a take-nothing judgment against Petitioner. 397 S.W.2d 919. We reverse the judgments below and remand the case to the trial court for further proceedings.

The findings of the trial court in its judgment, and the decretal portions thereof, will be helpful to an understanding of our holding and disposition of the cause. We quote from the findings of the trial court:

"* * * Further, that on the date [August 31, 1963] of such Order and at all other relevant times, Midland County, Texas, had a population of approximately seventy thousand (70,000) persons and that in excess of ninety-five per cent (95%) of such population resided in said new Commissioners' Precinct No. 1 and that the remaining population of said County was distributed among said new Commissioners' Precincts Nos. 2, 3, and 4. The court further finds that on the date of such Order and at all other relevant times in excess of ninety-seven per

cent (97%) of the qualified voters of said County shown on the certified lists of qualified voters * * * resided in said new Commissioners' Precinct No. 1 and the remaining qualified voters of said County shown on said lists of qualified voters were distributed among said new Commissioners' Precincts Nos. 2, 3, and 4. Further, that on the date of such Order and at all other relevant times other pertinent factors, such as land area and taxable values of said County, were grossly disproportionate among such new Commissioners' Precincts of said County. * * *

"The Court further finds that on the date of such Order and at all other relevant times the County of Midland could have been divided into Commissioners' Precincts on a basis or plan taking into proper account population, number of qualified voters, land area, taxable values, and other pertinent factors, which would have been and which would be practical and for the convenience of the people.

"The Court further finds that in passing and approving the Order of August 31, 1963, the Defendants * * * did not give due and proper consideration to the aforementioned factors or to any other factors which should have been considered in effecting any division of said County into Commissioners' Precincts. Further, that there was no evidence on the date of such Order or at any other relevant time justifying or supporting the division made by said Order. Further, that the principal purposes of Defendants * * * in passing and approving the Order of August 31, 1963, were for political expediency, to maintain the status quo, and to insure that the rural areas of Midland County, Texas, would continue to elect the majority of the members of the Commissioners' Court of said County.

"The Court further finds that in passing and approving the Order of Au-

gust 31, 1963, the Defendants \* \* \* acted arbitrarily, capriciously, unreasonably, unfairly, and wrongfully, and in gross abuse of their discretion, and that such action constituted invidious discrimination. Further, that the division of said County \* \* \* was not for the convenience of the people of Midland County \* \* \*."

The decretal portions of the judgment, however, were as follows:

"IT IS, THEREFORE, ADJUDGED AND DECREED by the Court that the order of the Commissioners' Court of Midland County, Texas, passed and approved on the 31st day of August, 1963, dividing and redistricting said County into new Commissioners' Precincts, and all prior orders of the Commissioners' Court of said County dividing the same into Commissioners' Precincts, be and they are hereby, in all things, set aside.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that not later than the next succeeding July or August term of the Commissioners' Court of Midland County, Texas, that said Commissioners' Court \* \* \* divide said County into four Commissioners' Precincts for the convenience of the people of said County *and in so doing* to establish such Commissioners' Precincts *so that each will have substantially the same number of people.*" (Italics added)

Petitioner attacks the current and prior orders of the commissioners court dividing Midland County into commissioners precincts as invalid under Article V, Section 18, Article I, Section 3, and Article I, Section 19, of the Texas Constitution and the equal protection clause of the Fourteenth Amendment to the United States Constitution, because of the gross population disparity. He argues that these constitutional provisions require equality of population in the precincts. Respondents assert, on the other hand, that Petitioner did not state or show a cause of action, or establish a justiciable interest or right to bring this suit as representative of a class, because equality of population in the precincts is not required but only that the precinct division be for the convenience of the people in the terms of Article V, Section 18, of the Texas Constitution.

Petitioner as a voter in the county has a justiciable interest in matters affecting the equality of his voting and political rights. Cf. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Stovall v. Shivers, 129 Tex. 256, 103 S.W.2d 363 (1937); Dubose v. Woods, 162 S.W. 3 (Tex.Civ.App.1913, no writ hist.). We agree with the holding of the trial court that the current order of the commissioners court redistricting Midland County is not supportable under the requirements of the Texas and the United States Constitutions for the reasons stated by the trial court in its judgment findings. We are not in agreement, however, with the judgment of the trial court to the extent that it orders a redistricting of the county on the sole basis of equality of population.

Article V, Section 18, of the Texas Constitution provides:

"Each organized county in the State now or hereafter existing, shall be divided from time to time, for the convenience of the people, into precincts \* \* Divisions shall be made by the Commissioners Court provided for by this Constitution. \* \* \* Each county shall in like manner be divided into four commissioners precincts in each of which there shall be elected by the qualified voters thereof one County Commissioner, who shall hold his office for four years and until his successor shall be elected and qualified. The County Commissioners so chosen, with the County Judge as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws

of the State, or as may be hereafter prescribed."

Article I, Section 3, reads as follows:

"All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

The county is a subordinate and derivative branch of state government. Its governmental body is the commissioners court composed of the four county commissioners with the county judge as the presiding officer. See Articles 2351 et seq., Vernon's Ann.Civ.Stats., for an enumeration of the statutory powers and duties of the commissioners court. The appellation "court" is a misnomer in the accepted meaning of the designation. See 11 Tex.L.Rev. 518 (1933). The commissioners are elected by the qualified voters of the precincts; the county judge is elected by the qualified voters of the entire county. The primary function of the commissioners court is the administration of the business affairs of the county. See Ehlinger v. Clark, 117 Tex. 547, 8 S.W.2d 666 (1928). Its legislative functions are negligible and county government is not otherwise comparable to the legislature of a state or to the federal Congress where the "one man, one vote" principle is asserted in its most exacting and compelling sense. See Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) [1]; Westberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

This Court has not written upon the specific duty of the commissioners court under Article V, Section 18, to divide the county from time to time into four commissioners precincts for the convenience of the people. There are four cases in which the Courts of Civil Appeals have done so: Lewis v. Harris, 48 S.W.2d 730 (Tex.Civ. App.1932, writ ref.); Ward v. Bond, 10 S.W.2d 590 (Tex.Civ.App.1928, no writ hist.); Williams v. Woods, 162 S.W. 1031 (Tex.Civ.App.1914, no writ hist.); Dubose v. Woods, 162 S.W. 3 (Tex.Civ.App.1913, no writ hist.). In *Harris*, 20 per cent of the people of the county elected three of the four commissioners and the taxable values in the one precinct containing 80 per cent of the population substantially exceeded those of the three other precincts combined. The suit was for a mandamus to compel a redistricting. It was held that such facts did not show that the discretion of the commissioners court had been abused by arbitrary action, the court saying:

"As applied to different situations, the phrase 'convenience of the people,' as used in the Constitution may have different meanings, but in our opinion it cannot properly be construed as imposing upon a commissioners' court the absolute duty of rearranging the boundaries of commissioners' precincts, from time to time, so as to accord to each precinct representation upon and power of control of the commissioners' court in proportion to their respective popula-

1. "Political subdivisions of States—counties, cities, or whatever—never were and never have been considered as sovereign entities. Rather, they have been traditionally regarded as subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions. As stated by the Court in Hunter v. City of Pittsburgh, 207 U.S. 161, 178, 28 S.Ct. 40, 46, 52 L.Ed. 151, [159] these governmental units are 'created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them,' and the 'number, nature and duration of the powers conferred upon [them] * * * and the territory over which they shall be exercised rests in the absolute discretion of the state.' The relationship of the States to the Federal Government could hardly be less analogous." Reynolds v. Sims, supra, 377 U.S. at 575, 84 S.Ct. at 1388.

tions, voting strengths, and taxable valuations. * * *"

Ward v. Bond considered a division order redistricting the county into new commissioners precincts equal in area but unequal in population to the extent that 54.5 per cent of the voters elected one commissioner, with 45.5 per cent electing the other three commissioners. The Court of Civil Appeals affirmed the action of the trial court sustaining the division order. The Court stated that disparity in population was not a sufficiently serious consideration to justify a reversal of the trial court judgment but pointed out that the disparity in population would shortly disappear as the result of the construction of a railroad through the county. The Court also sought to distinguish the *Dubose* and *Williams* cases on the ground that the new division lines in these cases practically deprived some voters of their right of franchise.

The *Williams* and *Dubose* cases were sequels and county districting orders were held invalid in each case. In *Williams,* Dunn County was divided in such manner that 500 voters would elect two commissioners and 120 voters would elect two commissioners. There was a similar disparity in area. It was recognized by both parties that the precincts had been divided along ethnic lines, the Court saying:

"The great disparity in acreage and population is sought to be justified only on the ground that the county should be so divided as to give the Anglo-Saxons a part of the precincts and the Mexican population the others. Convenience of the voter did not enter the consideration of the court, but divisions of the territory were made that will tend to foment strife among citizens of different races."

*Dubose* involved a division of Dunn County under which 500 voters elected one commissioner and 140 voters elected the remaining three commissioners, together with similar disparity in area and public roads. Moreover, the precincts were drawn so as to deprive two towns in the county of polling places where they had been located for the past thirty years. The Court said: "The facts alleged in the sworn petition show conclusively that as to neither class of precincts is the division of the county one which is convenient to the people of said county; and in fact such division is so arbitrary and wrong that the court should not for a moment tolerate the same. * * * When considered as commissioners' precincts, it is manifest that wrong was committed in making the districts largely disproportionate as to acreage and population. * * * The government of the county will be taken away from the majority of the voters. * * *"

▆▆▆ The requirements of Article V, Section 18, of the Texas Constitution are to be construed and enforced consistently with Article I, Section 3, commonly referred to as the equal rights or equal protection clause of the Texas Constitution. Cf. Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022 (1942). Equal protection of laws is not secured if persons are deprived of equality in political rights or otherwise subjected to an arbitrary exercise of governmental powers. See Burroughs v. Lyles, 142 Tex. 704, 181 S.W.2d 570 (1944); Mumme v. Marrs, 120 Tex. 383, 40 S.W.2d 31 (1931); Glasgow v. Terrell, 100 Tex. 581, 102 S.W. 98 (1907). This Court considered the terms "convenient" and "convenience of the people" appearing in Article V, Section 18, in Williams v. Castleman, 112 Tex. 193, 247 S.W. 263 (1922), involving an order of the commissioners court creating an additional justice of the peace precinct. Two principles relevant here were there recognized, namely, that in discharging the requirements of Article V, Section 18, the commissioners court was given some discretion to meet the "changing needs of the people" but such must be "exercised in good faith and without fraud, not arbitrarily, nor in gross abuse of discretion."

The basic problem of Texas counties in the respects under review is the extent of

political power which the metropolitan areas should have in relation to the rural areas. The very fact of population concentration enables the city voters to elect the county-wide officers. We recognized in Pritchard & Abbott v. McKenna, 162 Tex. 617, 350 S.W.2d 333 (1961), that the county commissioners court is not charged with the management and control of all of the county's business affairs; and that the various officials elected by all the voters of the county have spheres that are delegated to them by law and within which the commissioners court may not interfere or usurp. The voice of the rural areas will be lost for all practical purposes if the commissioners precincts of counties are apportioned solely on a population basis except, perhaps, in those few sparsely settled counties without a concentration of urban centers. Yet, important affairs of the county administered by the commissioners court—such as roads, bridges, taxable values of large land areas—disproportionately concern the rural areas. Theoretically, the commissioners court is the governing body of the county and the commissioners represent all the residents, both urban and rural, of the county. But developments during the years have greatly narrowed the scope of the functions of the commissioners court and limited its major responsibilities to the nonurban areas of the county. It has come to pass that the city government with its legislative, executive and judicial branches, is the major concern of the city dwellers and the administration of the affairs of the county is the major concern of the rural dwellers.

 As we have said, equal rights and equal protection of laws require equality in political rights and there may be circumstances under which equality in population of political subdivisions electing representatives to an overall governing body is essential to equality in voting rights. On the other hand, the convenience of the people in the particular circumstances of a county may require—and constitutionally justify— a rational variance from equality in population in commissioners precincts upon the basis of additional relevant factors such as number of qualified voters, land areas, geography, miles of county roads and taxable values. The trial court in its judgment found that such considerations could have been taken into account in the precinct division in Midland County, notwithstanding which he ordered a redistricting to achieve substantial equality of population.

We agree with the holding of the trial court that there is obvious arbitrariness in the current districting order here under attack because of the patent malapportionment of the commissioners precincts of Midland County. The judgment findings of the trial court show the absence of any rational basis therefor.

 We disagree with the judgment of the trial court in its requirement that Midland County be redistricted into commissioners precincts solely upon the basis of population. For the reasons before stated, we are of the opinion that the equal protection of the law clauses of the Texas and the United States [2] Constitutions do not require a commissioners precinct division of Texas counties on this basis in all cases, dependent, of course, in each case upon the existence and effect of other relevant factors such as those we have mentioned. But neither this Court nor the district court has the power to redistrict Midland County into commissioners precincts. This is the responsibility of the commissioners court and is to be accomplished within

2. "No State shall make or enforce any law which shall * * * deny to any person within its jurisdiction the equal protection of the laws." Amend. XIV, § 1, United States Constitution. See Tedesco v. Board of Supervisors, 43 So. 2d 514 (La.App.), appeal denied, 339 U.S. 940, 70 S.Ct. 797, 94 L.Ed. 1357 (1960),

and the clarification in Baker v. Carr, 369 U.S. at 235, 82 S.Ct. 691, of the dismissal of the appeal in *Tedesco* for want of a substantial federal question, to wit, there was a rational justification for the population disparity in the districting of city council seats.

the constitutional boundaries we have sought to delineate. In no event is a population disparity sustainable against a showing of discrimination, fraud, arbitrariness or abuse of discretion.

The judgments of the Court of Civil Appeals and of the trial court are reversed and the cause is remanded to the trial court for the entry of judgment in accordance with this opinion at a time not to interfere with the 1966 general election process.

HAMILTON, J., not sitting.

SMITH, J., dissenting.

## DISSENTING OPINION

SMITH, Justice.

I respectfully dissent. I would affirm the judgment of the Court of Civil Appeals. This is not a "one man-one vote case, nor is there any constitutional requirement for equality in commissioners precincts. Article V, Section 18 [1] of the Texas Constitution governs the organization of commissioners precincts. It is well settled by Texas cases that the phrase "for the convenience of the people" in said Article, confers on commissioners courts the discretion to divide precincts in some physically convenient way, and that there is no requirement for equality of population, and no duty to provide precincts which are equal in population. This is an "abuse of discretion case," the only question before

this Court being whether a single private citizen, as here, has a vested right and cause of action to revise and review a commissioners court precinct order to achieve equality in population. The trial court in its judgment, made several findings of fact, as the Court has indicated, but the decretal portion of the judgment only relates to the finding in regard to population disparity. The judgment directs the commissioners court to use equal distribution of population as the dominant factor in redistricting the County. The judgment rendered by this Court is meaningless. If the Court remands the cause generally for a new trial, citizen Avery has accomplished nothing. On the other hand, if the judgment of the trial court striking down the commissioners court order is upheld, still nothing has been accomplished, except to create additional chaos and confusion. This is true, because Avery, as a single individual and private citizen, has no right or standing in court to question the way the government is run or organized, including the location of commissioners precinct boundaries in Midland County Texas, unless and until he can show some personal loss, damage or harm to his private interests resulting from the governmental operation. See Meredith v. Sharp, Tex.Civ.App., 256 S.W.2d 870 (1953, writ refused, no reversible error) with Per Curiam opinion, 152 Tex. 437, 259 S.W.2d 172. This case was one wherein mandamus was sought to require a commissioners court to create the office of Justice of the Peace, Place No. 2 of Justice of the Peace,

1. "Sec. 18. Each organized county in the State now or hereafter existing, shall be divided from time to time, for the convenience of the people, into precincts, not less than four and not more than eight. Divisions shall be made by the Commissioners Court provided for by this Constitution. In each such precinct there shall be elected one Justice of the Peace and one Constable, each of whom shall hold his office for four years and until his successor shall be elected and qualified; provided that in any precinct in which there may be a city of 8,000 or more inhabitants, there shall be elected two Justices of the Peace. Each county

shall in like manner be divided into four commissioners precincts in each of which there shall be elected by the qualified voters thereof one County Commissioner, who shall hold his office for four years and until his successor shall be elected and qualified. The County Commissioners so chosen, with the County Judge as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed. As amended Nov. 2, 1954."

Precinct One of Gregg County, Texas. I think the Court would have made the same holding had the cause been before the appellate courts on appeal.

The Court upheld the judgment of the trial court that Article V, Section 18 of the Texas Constitution "confides in the Commissioners' Court the authority to create a justice of the peace court as here sought; that the convenience of the people is the basic purpose for designating such an additional justice court; *and that the creation of such additional justice of the peace court is a discretionary act of the Commissioners' Court and not a ministerial function of such court.*" [Emphasis added.] The Court then said:

"We cannot escape the import of the use of the term 'for the convenience of the people' in Sec. 18, supra; 16 C.J.S., Constitutional Law, § 23. The latitude so granted the Commissioners' Court to create not less than four and not more than eight such precincts, and the power to change the boundaries of such precincts from time to time emphasizes the intent to vest discretionary powers in the Commissioners' Court in determining whether or not the creation of such additional court would be for the convenience of the people, that is suitable, appropriate or advisable to meet the needs of the people. This discretionary power on the part of the Commissioners' Court is fully recognized in Williams v. Castleman, 112 Tex. 193, 247 S.W. 263, by our Supreme Court, which involved an affirmative act of the Commissioners' Court in creating such an additional Justice Court, and in the holdings in Lewis v. Harris, Tex.Civ. App., 48 S.W.2d 730, and Ward v. Bond, Tex.Civ.App., 10 S.W.2d 590, 594, which dealt with the discretionary powers of a Commissioners' Court as related to the latter clause of Sec. 18, supra, in altering a Commissioners' Precinct.

" 'Mandamus will not lie to control or review the action of an official or board upon matters involving the exercise of discretion or judgment confided to such official or board.' Lewis v. Harris, supra, 48 S.W.2d at page 732; 28 T. J. (Mandamus), Sec. 33."

This holding in regard to discretionary power to create justice courts is equally applicable to this case where the commissioners court has exercised its discretion in changing its boundary lines.

If it can be said that the judgment of the trial court is based upon a finding of abuse of discretion and that Avery has a justiciable interest, I nevertheless maintain that the trial court confined its holding to require a redistricting of Midland County into commissioners precincts upon the basis of population alone.

Avery is in no position to individually attack or set aside the order creating Midland County commissioners precincts because of a disparity in the population of the several precincts in the absence of a showing of some damage, harm, inconvenience, or financial loss to himself personally. This he has failed to do. There being no duty to provide Avery with equally populated commissioners precincts, no legal wrong has been done to him by refusal to divide in that way; there has been no invasion of his personal rights by including him in a commissioners precinct with a population larger than the other precincts.

Avery attempts to also bring this suit in terms of a class action. In this attempt he completely fails. In his petition he states his capacity as follows:

"Plaintiff files this petition on behalf of himself and other persons similarly situated in the City of Midland, Precinct No. 1, Midland County, Texas, and states that he is a resident, taxpayer, and legally qualified voter and elector of the City of Midland, Precinct No. 1, Midland County, Texas, and that, as such, he is legally qualified to vote for municipal, precinct and county offices in Midland County, Texas."

The right which he sought was as follows:

"The Plaintiff has a right and interest to see that *his* civil rights and liberties and in particular *his* right and interest in an equitable apportionment of voting power for members of the Commissioners Court are protected in accordance with the terms of the Texas Constitution and Section 1 of the 14th Amendment to the Constitution of the United States."

The pleadings in this case upon which Avery went to trial are completely void of allegations which would qualify as a class action. The petition fails to comply with any of the provisions of Rule 42,[2] Texas Rules of Civil Procedure. Only a quick glance at the rule is required to conclude that Avery does not seek to qualify under subdivision (1) of the rule, because the rights which he seeks to enforce are *his* rights and liberties and *his* right to equitable voting power. Such right is not joint or secondary and on its face could not be the proper subject of a class action under subdivision (1) of the rule. Subdivision 2 is out, because there is no specific property involved in this action. Avery's petition fails to qualify him as representing a class, in that it fails to state that there are persons constituting a class. The petition on which

he went to trial does not allege that there are other persons having a common interest with Avery in an adjudication of a common question of fact or law. In fact, the record shows that public officials and many others who publicly refused to support Avery, were all citizens of Midland. The evidence and the proceedings fail to show any support of Avery's position from the City of Midland or the residents of the City as a group. The petition does not describe any identifiable class of persons nor state or show that they are so numerous as to make their joinder in the suit impracticable. There is nothing in the petition to show that there are others "smilarly situated." The pleadings are lacking and Avery produced no evidence to warrant a valid class judgment. See Schenker v. City of San Antonio, Tex. Civ.App., 369 S.W.2d 626 (wr. ref., n. r. e. 1963).

Since the subject matter of Avery's complaints in this Court is the disparity of population, and since that subject is a matter of *public* not *private* concern, and since Avery did not properly allege or prove a class action in the trial court, so as to represent the public, the result is that he never reaches or gets to the question of substantial evidence, abuse of discretion, or his asserted claims to *alternative*[3] relief.

2. "(a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, in behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought.

"(b) Dismissal or compromise. A class action shall not be dismissed nor com-

promised without the approval of the court. If the right sought to be enforced is one defined in paragraph (1) of subdivision (a) of this rule notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. If the right is one defined in paragraphs (2) or (3) of subdivision (a) notice shall be given only if the court requires it. Amended by order of September 20, 1941, effective December 31, 1941."

3. The prayer, reflecting the relief sought, reads as follows:

"Wherefore, premises considered, Plaintiff prays that Defendants be cited to appear herein and that upon final hearing Plaintiff have judgment as follows:

"(a) That the Defendants Gideon, Bryant, Moreland, and Osborne, consti-

Avery has no standing in this Court to complain of the action of the Court of Civil Appeals on his substantial evidence and alternative relief claims. I would dismiss this cause for want of jurisdiction. In no event does the Constitution of the United States or the Texas Constitution require that Midland County be divided into four equally populated precincts. The Court's view, if finally adopted, will lead to great

tuting a majority of the members of the Commissioners' Court of Midland County, Texas, acted arbitrarily, capriciously, unreasonably, unfairly and wrongfully and in abuse of their discretion in passing and approving the Order of August 31, 1963, dividing Midland County into Commissioners' Precincts and that said Order, and all prior Orders dividing said county into Commissioners' Precincts, be set aside and that said Defendants Gideon, Bryant, Moreland, Osborne and Culver, as members of the Commissioners' Court, be directed to pass a new Order dividing said County into Commissioners' Precincts for the convenience of the people.

"(b) In the alternative, that the Defendants Gideon, Bryant, Moreland, and Osborne, constituting a majority of the members of said Commissioners' Court, acted arbitrarily, capriciously, unreasonably, unfairly and wrongfully and in abuse of their discretion in passing and approving the Order of August 31, 1963, dividing Midland County into Commissioners' Precincts and that said Order, and all prior Orders dividing said County into Commissioners' Precincts, be set aside and that said Defendants Gideon, Bryant, Moreland, Osborne and Culver, as members of the Commissioners' Court, be directed to pass a new Order dividing said County into Commissioners' Precincts for the convenience of the people, giving proper consideration to equality of population, qualified voters, land area, tax values, miles of County roads, and other pertinent things among said Commissioners' Precincts.

"(c) In the alternative, that the Defendants Gideon, Bryant, Moreland and Osborne, constituting a majority of the members of the Commissioners' Court of Midland County, Texas, acted arbitrarily, capriciously, unreasonably, unfairly, and wrongfully and in gross abuse of their discretion in passing said Order and that it and all prior Orders dividing said County into Commissioners' Precincts be set aside and that writ of mandamus issue compelling the Defendants Gideon, Bryant, Moreland, Osborne and Culver, as members of the Commissioners' Court, to pass a new Order dividing said County into Commissioners' Precincts for the convenience of the people and in so doing

to establish, as nearly as possible and practicable, such Precincts so that each will have substantially the same number of people, qualified voters, square miles, and other pertinent things.

"(d) In the alternative, that the Defendants Gideon, Bryant, Moreland, and Osborne, constituting the members of the Commissioners' Court of Midland County, Texas, acted arbitrarily, capriciously, unreasonably, unfairly and wrongfully and in abuse of their discretion in passing said Order and that it and all prior Orders dividing said County into Commissioners' Precincts be set aside and that writ of mandatory injunction issue restraining and enjoining the Defendants Gideon, Bryant, Moreland, Osborne and Culver, as members of the Commissioners' Court from continuing said Order in effect or calling or conducting any election thereunder and directing said Defendants to pass a new Order dividing said County into Commissioners' Precincts for the convenience of the people and in so doing to establish, as nearly as possible and practicable, such Precincts so that each will have substantially the same number of people, qualified voters, square miles, and other pertinent things.

"(e) In the alternative, that the Order of said Defendants on August 31, 1963, dividing Midland County into Commissioners' Precincts was and is repugnant to and in conflict with one or more of the following: The Fourteenth Amendment, Section 1, of the Constitution of the United States of America and Article 1, Sections 1, 2, 3, and 19, of the Constitution of the State of Texas, for the reason that it deprives Plaintiff and others similarly situated of their constitutional rights, privileges, liberties, and guarantees, and that it and all prior Orders dividing said County into Commissioners' Precincts be set aside and that said Defendants, as members of the Commissioners' Court be directed to pass a new Order dividing said County into Commissioners' Precincts for the convenience of the people and in so doing to establish, as nearly as practicable and possible, such Precincts so that each will have substantially the same number of people and qualified voters."

confusion and uncertainty not only in Midland County, but in every county in Texas with citizens who have a desire to substitute their judgment for that of the commissioners courts. It seems to me that this is not the proper case in which to extend the doctrine of the one man-one vote rule to the governing bodies of local governments such as commissioners courts. Perhaps, in a proper case, the federal courts will in the future take jurisdiction under the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, but I cannot imagine a situation, much less the one presented in this case, where the Texas Constitution or the case law would warrant a holding that there must be equality of population in Commissioners precincts.